EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Burlington Air Express,Inc.<br>Demandante-Recurrida<br><br>v.<br><br>Municipio de Carolina<br>Demandada-Peticionaria | Certiorari<br><br>2001 TSPR 98<br><br>154 DPR ____ |

Número del Caso: CC-1997-511

Fecha: 29/junio/2001

Tribunal de Circuito de Apelaciones:
                              Circuito Regional VII

Juez Ponente:
                         Hon. Frank Rodríguez García


Abogados de la Parte Peticionaria:
                         Lcdo. Pedro E. Ortiz Alvarez
                         Lcda. Jeannette Vecchini

Abogados de la Parte Recurrida:
                         Lcdo. Mario Arroyo Dávila
                         Lcdo. Manuel E. Elías Rivera


Materia: Reintegro de Patentes Municipales

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Burlington Air Express, Inc.

    Demandante-Recurrida

       vs.                CC-1997-511        Certiorari

Municipio de Carolina

    Demandada-Peticionaria

Opinión del Tribunal emitida por el Juez Asociado señor Fuster Berlingeri.

San Juan, Puerto Rico, a 29 de junio de 2001.

Nos toca resolver si al Municipio de Carolina le está vedado cobrar las patentes municipales correspondientes sobre el negocio de transporte aéreo de carga, en virtud de lo dispuesto por la sección 113(a) del Airport Development Acceleration Act, 49 U.S.C.A. sec. 1513(a).

I

Burlington Air Express, Inc. (Burlington) es una corporación organizada bajo las leyes del estado de Delaware y autorizada a hacer negocios en Puerto Rico. Dicha corporación se dedica al transporte aéreo de carga entre Puerto Rico y varios puntos

dentro de los Estados Unidos de Norteamérica y en el extranjero. El referido negocio está ubicado en el Aeropuerto Internacional Luis Muñoz Marín, en Isla Verde, Carolina P.R.

Durante los años 1984 a 1988 Burlington pagó patentes municipales al Municipio de Carolina por la suma de $51,056.33. El 30 de noviembre de 1987, la firma de auditores KPMG Peat Marwick solicitó a nombre de Burlington que el Municipio le reintegrara a su cliente la cantidad de $37,796 la cual alegadamente había sido pagada en exceso por concepto de patentes. El 20 de abril de 1988, KPMG Peat Marwick modificó su solicitud original y en esta reclamación enmendada solicitó el reintegro de $51,056.33.

El 26 de enero de 1995, la Directora de Finanzas del Municipio de Carolina denegó la solicitud de reintegro referida. En vista de ello, Burlington presentó una demanda sobre reintegro de patentes ante el Tribunal de Primera Instancia, Sala Superior de Carolina. Luego de varios trámites procesales, el 28 de junio de 1995 Burlington presentó una moción de sentencia sumaria y alegó que no existía controversia de hechos y que procedía dictarse la sentencia solicitada a su favor por ser el pago de la patente en cuestión una contribución[1] proscrita por la citada disposición, 49 U.S.C.A. 1513(a), que era una legislación federal que ocupaba el campo.[2] El Municipio se opuso y alegó que del historial legislativo de la disposición en cuestión y de la jurisprudencia pertinente se desprendía de modo claro que la prohibición aludida se limitaba solamente a impuestos sobre el tráfico aéreo de personas y no se extendía al tráfico de carga.

El 5 de febrero de 1996, el tribunal de instancia dictó una sentencia sumaria a favor de Burlington. Este concluyó que el texto de la sección 1513(a) referida prohibía la imposición de cualquier tipo de tributación computada sobre el ingreso bruto devengado de la transportación aérea, incluyendo la transportación aérea de carga. Le ordenó al Municipio abstenerse de cobrar patentes por dicho concepto y que reintegrase las patentes ya pagadas.

Inconforme con este dictamen, el Municipio presentó un recurso de apelación ante este Tribunal. Mediante resolución de 17 de mayo de 1996, dispusimos que el recurso aludido no planteaba una cuestión constitucional sustancial y que procedía remitir el recurso al Tribunal de Circuito de Apelaciones. Remitido el caso, y luego de los trámites apelativos de rigor, el foro apelativo emitió una sentencia y confirmó la del foro de instancia. Resolvió que la prohibición establecida por la referida sección 1513(a) impedía la imposición de patentes municipales sobre el ingreso bruto devengado por el transporte aéreo de carga.

---

[1] Burlington basó esta conclusión en lo resuelto por este Foro en American Express v. Mun. de San Juan, 120 D.P.R. 339 (1988), en el cual se resolvió que el pago de patentes es una contribución sobre el ingreso bruto y no una licencia o permiso.

Por no estar de acuerdo con el dictamen del foro apelativo, el Municipio acudió oportunamente ante nos mediante un recurso de certiorari y alegó los siguientes errores:

**PRIMER ERROR**

Erró el Tribunal de Circuito de Apelaciones al confirmar la determinación del Tribunal de Primera Instancia que concluyó que la sección 1513(a) del Título 49 de las Leyes de Estados Unidos prohíbe imponer el pago de patentes municipales, computados a base del ingreso bruto devengado por el negocio de transporte aéreo de carga.

**SEGUNDO ERROR**

Erró el Tribunal de Circuito de Apelaciones al confirmar la determinación del Tribunal de Primera Instancia que impuso el pago de honorarios de abogado al Municipio de Carolina.

El 21 de noviembre de 1997 expedimos el recurso solicitado para revisar el dictamen del foro apelativo. El 27 de enero de 1998 la parte peticionaria presentó su alegato. La parte recurrida presentó el suyo el 25 de febrero de 1998, y lo amplió el 16 de junio de 1999.

Con el beneficio de sus comparecencias, pasamos a resolver.


II

La cuestión precisa ante nos es si lo dispuesto en la sección 1513(a) del Título 49 del U.S.C.A. es aplicable a Puerto Rico de modo tal que el Municipio de Carolina está impedido de imponer patentes municipales sobre el negocio de transporte aéreo de carga que ocurre dentro de su demarcación.

Como se sabe, la sección nueve (9) de la Ley de Relaciones Federales dispone, en lo pertinente aquí, que "Las leyes estatutarias de Estados Unidos que no sean localmente inaplicables... tendrán el mismo efecto y validez en Puerto Rico que en los Estados Unidos..." 1 L.P.R.A., Materia #3, Relaciones Federales. En virtud de esta disposición, aplica claramente a Puerto Rico cualquier estatuto federal que satisfaga dos requisitos: (1) que la ley federal sea una que el Congreso puede legislar válidamente para los estados de la Unión; (2) que el Congreso haya dispuesto expresamente que también aplica al Estado Libre Asociado de Puerto Rico. Véase, Córdova v. Chase Manhattan Bank, 649 F. 2d 36 (1981); Moreno Ríos v. U.S.A., 256 F. 2d 68 (1958); Sánchez v. U.S., 256 F. 2d 73 (1958); U.S. v. Figueroa Ríos, 140 F. Supp. 376 (1956); Consentino v. I.L.A., 126 F. Supp. 420 (1954). Véase, también Caribtow v. Occupational Safety and Health Review Commission, 493 F. 2d 1064 (1974).

A la luz de lo anterior, no cabe duda de que la disposición de la ley federal que está en cuestión en el caso de autos es aplicable al Estado Libre Asociado de Puerto Rico. Se trata de una disposición estatutaria que el Congreso puede legislar para los

---

[2] Esta sección fue enmendada posteriormente y codificada como 49 U.S.C.A. Sec. 40116.

estados de la Unión al amparo de la Cláusula de Comercio Interestatal de la

Constitución de Estados Unidos; y ésta se hizo **expresamente** aplicable a Puerto Rico, según consta de su texto:

> No State or political subdivision thereof, **including the Commonwealth of Puerto Rico**, the Virgin Islands, Guam, the District of Columbia, the territories or possessions of the United States . . . shall levy or collect a tax, fee, head charge or other charge, directly or indirectly, on **persons** travelling in air commerce or on the **carriage** of persons travelling in air commerce or on the **sale of air transportation**. . . (Enfasis suplido)

Ahora bien, **¿qué es lo que dicha disposición prohíbe concretamente?**

Como puede observarse de su claro texto, la referida sección 1513(a) del Título 49 de las Leyes de los Estados Unidos Anotadas, 49 U.S.C.A. 1513(a), prohíbe la imposición de tributos estatales sobre **tres objetos** muy específicos: (1) las **personas** que viajen en el comercio aéreo; (2) el **transporte** que acarrea a tales personas, es decir, el avión; y (3) la **venta** de la transportación aérea, es decir, la transacción mediante la cual se venden los boletos de viaje. Es evidente que la disposición estatutaria aludida se limita a vedar los impuestos estatales sólo a tres instancias muy particulares. No incluye de ningún modo textual claro la tributación de la **transportación aérea de carga**, que es lo que aquí nos concierne.

En efecto, un examen del historial legislativo de la sección 1513(a) referida demuestra que lo que el Congreso quiso evitar con dicha disposición fue la tributación estatal sólo sobre el tráfico aéreo de pasajeros. El proponente de la disposición referida describió claramente sus objetivos y alcance en los siguientes términos:

> **S 38 prohibits a new, inequitable, and potentially chaotic burden of taxation on nearly 200 million persons who use air transportation each year. The bill prohibits the levying of state or local head taxes, fees, gross receipts taxes or other such charges either on passengers or on the carriage of such passengers in interstate commerce. 119 Congressional Record pag 3349, 93rd Congress, 1st Session. (Enfasis suplido.)**

En ninguna parte del historial legislativo aparece la intención congresional de extender la prohibición en cuestión a los impuestos estatales sobre **carga** aérea.

El hecho que ni el texto de la sección 1513(a) ni su historial legislativo incluyen la carga aérea en la veda referida está comprobado por la decisión del Tribunal Supremo de Arizona a los efectos de que la disposición federal en cuestión no le impedía a dicho estado imponer una tributación sobre la carga aérea. State of Arizona, etc. v. Cochise Airlines, 626 P 2d 596 (1980). Dicha decisión es importante no sólo por su propio valor persuasivo sino, además, porque **ésta fue citada con aprobación** por el mismo Tribunal Supremo de Estados Unidos en Aloha Airlines v. Director of Taxation, 464 U.S. 7 (1983), nota al calce 11, págs. 14-15, en la que se indica que la sección 1513(a) **"pre-empts state gross receipts taxes on the carriage of passengers, but not freight, in air commerce"**.[3]

---

[3] "Esta cita la formula el propio Tribunal Supremo federal en la nota al calce referida. Es de suponer que dicho Foro no señalaría lo expresado en dicha

A la luz de todo lo anterior, en Derecho es claro que el Municipio no está vedado de imponer una patente sobre la carga aérea de una empresa que hace negocios dentro del municipio. Ni el texto de la disposición federal en cuestión, ni su historial legislativo, ni importantes decisiones judiciales que son pertinentes requieren tal veda.

El Tribunal de Circuito de Apelaciones apoyó su dictamen de que el Municipio estaba impedido de cobrar las patentes en cuestión en otra disposición federal, 49 U.S.C.A. § 1301(a)(10), que define **"air transportation"**, e incluye en tal término la **"transportación aérea interestatal"**, que a su vez se define en aun otra disposición federal, 49 U.S.C.A. 1301(a)(24), que incluye en este segundo término "el transporte por avión de personas o **propiedad**". De este entretejimiento de disposiciones dispersas, el foro apelativo llegó a la conclusión de que la disposición particular que aquí nos concierne—-la 1513(a)-—incluye por referencia el transporte por avión de **propiedad**, por lo que **asume o supone** que tal concepto equivale a **carga** aérea. No explicó dicho foro por qué es ello así. No citó autoridad o razonamiento alguno que apoyara claramente tal equivalencia.

Dicho de otra forma, para llegar a la conclusión de que el texto claro de la sección 1513(a), que no incluye la carga aérea de ningún modo expreso, abarca aun así tal carga, el Tribunal de Circuito de Apelaciones se amparó en una complicada hermenéutica que ignoraba al propio texto de dicha disposición, su claro historial legislativo y unas decisiones judiciales de clara autoridad.

Mas aun, la enrevesada técnica de interpretación del foro apelativo no tomó en cuenta el dato esencial de que las dispersas disposiciones federales que entretejió para llegar a su conclusión, fueron aprobadas por el Congreso en **diversos años** y en **estatutos diferentes**. En efecto, las definiciones estatutarias en las cuales se amparó el dictamen impugnado aquí datan del 1958 (Public Law 85-726, 72 Stat. 731) mientras que la sección 1513(a) que específicamente nos concierne, cuyo historial no incluye la veda de carga, fue aprobada posteriormente en 1973 (Pub. L. 93-44, 87 Stat. 90), por lo que su texto prevalece sobre los anteriores.

## III

Al considerar los señalamientos previos, es menester tener muy en cuenta que el propio Tribunal Supremo de Estados Unidos reiteradamente ha señalado que la doctrina jurisprudencial sobre el "campo ocupado" (pre-emption) aplica solamente cuando el Congreso **expresamente** ocupa el campo o cuando es **patentemente evidente** que el Congreso tuvo la intención de excluir la legislación estatal sobre determinado asunto. Wardan

---

cita si creyese que parte de lo indicado allí es erróneo. Por tanto, se infiere claramente que dicho Tribunal entendió que la ley federal no impedía la imposición de tributos sobre la carga aérea (**"not freight"**). El claro

Canada v. Florida Dept. of Revenue, 477 U.S. 1, 5 (1986). Lo señaló así precisamente en un caso que se originó en Puerto Rico:

> **"As we have repeatedly stated, 'we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress...".** Puerto Rico Consumer Affairs Dept. v. Isla Petroleum, 485 U.S. 495, 500 (1988).

En el caso de autos no está consignada de ningún modo expreso o claro la intención del Congreso de desplazar el poder de tributación del Estado Libre Asociado de Puerto Rico y sus municipios con respecto a la carga aérea que se origina en nuestro país. Por el contrario, razones de mucho peso apoyan la idea de que el Congreso nunca ha tenido tal intención. En tales circunstancias, no puede suponerse que existe una prohibición federal sobre el particular, que limita el más fundamental poder del Estado. Una limitación de tal naturaleza no debe declararse por este Tribunal a base de suposiciones y de un complicado entretejimiento de disposiciones estatutarias diversas aprobadas en distintos años, no sólo porque el propio Tribunal Supremo federal así lo ha resuelto, sino además, porque no nos compete menoscabar de modo tan cuestionable los poderes y la autoridad del Estado Libre Asociado de Puerto Rico.

No debe olvidarse que en Derecho es claro que la facultad de tributación del Estado Libre Asociado, que incluye la de los municipios, **es el más fundamental** de sus poderes públicos y gubernamentales. RCA v. Gob. de la Capital, 91 D.P.R. 416, 428 (1964). Se trata de un poder que es "esencial a su subsistencia y para su supervivencia" como un Estado político. Id. Tiene una "gravísima y vital importancia". P.R. Telephone Co. v. Trbl. Contribuciones, 81 D.P.R. 982, 992-994 (1960). Por ello hemos resuelto antes que este amplio poder lo ejerce el Estado Libre Asociado "libre de autoridad superior, sujeto sólo a las limitaciones de su propia Constitución..., y a aquellas obligaciones que el pueblo se impuso al aceptar las relaciones federales que habrían de existir y existen con los Estados Unidos a tenor de la Ley Pública 600." RCA v. Gob. de la Capital, supra, a las págs. 428-429. Aquí es altamente cuestionable que el Congreso haya tenido la intención de extender a la transportación aérea de carga la prohibición federal de impuestos estatales sobre la transportación aérea de pasajeros. Por ello, este Tribunal no debe precipitarse a aherrojar uno de los poderes fundamentales del Estado Libre Asociado y sus divisiones políticas.

IV

Por los fundamentos expuestos, se dictará sentencia para revocar la del foro apelativo en el caso de autos de 30 de junio de 1997, y para dejar sin efecto también la del Tribunal de Primera Instancia, Sala de Carolina, del 5 de febrero de 1996.

---

lenguaje expreso del Tribunal prevalece sobre otras consideraciones argumentativas."

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Burlington Air Express, Inc.

    Demandante-Recurrida

        vs.              CC-1997-511       Certiorari

Municipio de Carolina

    Demandada-Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 29 de junio de 2001.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente sentencia, se revoca la del foro apelativo en el caso de autos de 30 de junio de 1997; y se deja sin efecto también la del Tribunal de Primera Instancia, Sala de Carolina, del 5 de febrero de 1996.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón emitió opinión disidente, a la cual se unieron los Jueces Asociados señores Corrada del Río y Rivera Pérez.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Burlington Air Express, Inc.

    Demandante Recurrida

      v.                          CC-1997-511

Municipio de Carolina

    Demandada Peticionaria

Opinión disidente emitida por la Juez Asociada señora NAVEIRA DE RODÓN, a la cual se unen los Jueces Asociados señores CORRADA DEL RÍO y RIVERA PÉREZ

San Juan, Puerto Rico a 29 de junio de 2001

Nos corresponde determinar si la ley federal "Airport Development Acceleration Act" de 1973, Ley Púb. No. 95-44, Título 49 de las Leyes de Estados Unidos, prohíbe ("pre-empts") que el Municipio de Carolina (en adelante Municipio) pueda imponer el cobro de patente municipal sobre el volumen de negocios (ingreso bruto) devengado del servicio de transporte aéreo de carga realizado por una línea aérea.

Por entender que la decisión de la mayoría de este Tribunal se aleja de la interpretación que consistentemente los tribunales estatales y

federales, así como los comentaristas, le han dado a la disposición en controversia, 49 U.S.C.A. § 1513, disentimos.

I

Burlington Air Express, Inc. (en adelante Burlington), corporación organizada bajo las leyes del estado de Delaware y autorizada a hacer negocios en Puerto Rico, es una línea aérea dedicada al transporte aéreo de carga entre Puerto Rico, Estados Unidos y el extranjero. Su base de operaciones se encuentra en el Aeropuerto Internacional Luis Muñoz Marín, localizado en Carolina, Puerto Rico.

Durante los años 1983-1988, Burlington rindió sus declaraciones de volumen de negocios y pagó al Municipio patentes municipales por concepto del ingreso del transporte aéreo de carga,[4] de acuerdo con lo dispuesto en la Ley de Patentes Municipales, Ley Núm. 113 de 10 de julio de 1974, según enmendada, 21 L.P.R.A. § 651 *et seq* (en adelante Ley de Patentes Municipales).

El 30 de noviembre de 1987, la firma de auditores KMPG Peat Marwick, mediante carta suscrita por el Sr. Juan Acosta, solicitó en nombre de Burlington que el Municipio le reintegrara a la peticionaria la cantidad de $37,796 por concepto de contribuciones pagadas en exceso durante los años 1984-1985 a 1987-1988. El 20 de abril de 1988, KMPG Peat Marwick envió otra carta enmendando la solicitud original, y solicitó al Municipio que le reintegrara a Burlington la cantidad de $51,056 en concepto de contribuciones pagadas en exceso.[5] A estos efectos sometió declaraciones de volumen de negocios enmendadas. En esta carta, Burlington alegó que el negocio de transporte aéreo de carga estaba exento del pago de patente municipal, de acuerdo con el "Airport Development Acceleration Act", 49 U.S.C.A. § 1513,[6] conocida también como el "Anti-Head Tax Act."[7]

---

[4] Durante los años en controversia, Burlington pagó patentes municipales por la cantidad de $51,056.33, que se distribuyen como sigue: año 1984-1985: $8,550.00; año 1985-1986: $14,128.38; año 1986-1987: $14,009.37; año 1987-1988: $14,368.58.

[5] El Art. 24 de la Ley de Patentes Municipales provee para que cuando una persona haya pagado en exceso cualquier patente impuesta por ley, dicha persona pueda solicitar un crédito o reintegro por lo pagado en exceso. Este reintegro deberá solicitarse dentro de los cuatro (4) años de haber rendido su declaración de volumen de negocios o dentro de los tres (3) años de haber pagado la patente, lo que sea más tarde. 21 L.P.R.A. § 652f(a)(1) y (b)(1).

[6] Esta sección fue recodificada en 1994, como la 49 U.S.C.A. § 40116. Sin embargo, esto no altera el análisis pertinente ya que la disposición continuó siendo fundamentalmente la misma. Esta sección prohíbe a los Estados y a Puerto Rico imponer contribuciones estatales a ciertas actividades de negocio realizadas por las líneas aéreas.

[7] Nos estaremos refiriendo a la ley como "Anti-Head Tax Act" o "49 U.S.C.A. § 1513".

El 1 de junio de 1988, el Director de Finanzas del Municipio denegó la solicitud de reintegro de Burlington, fundamentándose principalmente en una opinión del Secretario de Justicia no publicada, de fecha de 7 de mayo de 1987, en la cual éste concluyó que las líneas aéreas estaban sujetas al pago de patente municipal de acuerdo con la Ley de Patentes Municipales y el "Anti-Head Tax Act", 49 U.S.C.A. § 1513(a).

Así las cosas, el 26 de diciembre de 1989, Burlington suscribió otra carta al Director de Finanzas del Municipio. En ésta, Burlington alegó que de acuerdo a una nueva Opinión del Secretario de Justicia no publicada, de 28 de agosto de 1989, el "Anti-Head Tax Act" prohibía a los municipios imponer patente municipal sobre el volumen de negocios de la venta de transportación aérea, ya fuese ésta de carga o de pasajeros. Por consiguiente, Burlington solicitó nuevamente el reembolso de las patentes municipales pagadas durante los años 1984-1985 a 1986-1987. El 26 de enero de 1995, la Directora de Finanzas del Municipio, denegó la solicitud de reintegro.[8]

Burlington radicó demanda contra el Municipio el 23 de febrero de 1995.[9] En ésta alegó que de acuerdo al 49 U.S.C.A. secciones 1301[10] y 1513, la Opinión del Secretario de Justicia de 28 de agosto de 1989 y la jurisprudencia aplicable, no procedía que se le impusiera a Burlington el pago de patente municipal por el negocio de transporte aéreo de carga. Por su parte, el Municipio contestó la demanda y negó que Burlington estuviera exenta de pagar patente municipal. Alegó el Municipio que la prohibición establecida por el "Anti Head Tax Act" era aplicable únicamente al transporte aéreo de personas y no al transporte aéreo de carga.

Así las cosas, Burlington radicó una moción de sentencia sumaria. El Municipio radicó un escrito titulado "Oposición a moción de sentencia sumaria y moción de sentencia sumaria" en el cual solicitó que se declarara sin lugar la moción presentada por

---

[8] No surge del expediente del caso que, salvo esta carta de 26 de diciembre de 1989, hubiese habido alguna otra comunicación entre Burlington y el Municipio entre los años 1989 a 1995, ni surge de los escritos presentados por las partes explicación alguna para este hecho. Tampoco surge del expediente que la denegatoria del reintegro por parte de la Directora de Finanzas del Municipio fuese por escrito. La información relativa a la última denegatoria surge de la alegación número 9 de la demanda radicada por Burlington, en la cual se indicó que el 23 de enero de 1995 la Directora de Finanzas del Municipio denegó el reintegro solicitado por Burlington. Por su parte, el Municipio aceptó en su contestación a la demanda esta alegación.

[9] El Art. 25 de la Ley de Patentes Municipales dispone que "si una reclamación de crédito o reintegro radicada por una persona fuere denegada en todo o en parte por el Director de Finanzas, éste deberá notificar de ello a la persona por correo certificado, y la persona podrá recurrir de dicha denegatoria ante el Tribunal de Primera Instancia, radicando demanda en la forma provista por ley dentro de los treinta (30) días siguientes a la fecha del depósito en el correo de dicha notificación". 21 L.P.R.A. § 652g.

Burlington, y se dictara sentencia sumaria a favor del Municipio. El foro de instancia acogió la moción presentada por Burlington, y dictó sentencia sumaria en favor de ésta. Concluyó que procedía el reintegro de la patente pagada para los años en controversia y además, le impuso al Municipio el pago de costas y gastos por la suma de mil (1,000) dólares.

Inconforme con esta sentencia, el Municipio recurrió ante nos mediante recurso de apelación, por entender que la controversia planteaba una cuestión constitucional sustancial.[11] Mediante Resolución de 17 de mayo de 1996, remitimos el caso al Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito) por entender que no estaba planteada una cuestión constitucional sustancial.

Luego de considerar el caso, el Tribunal de Circuito confirmó la sentencia dictada por el foro de instancia. Determinó que el Municipio estaba impedido de cobrar una patente municipal por el transporte aéreo de carga de Burlington, porque la prohibición establecida por el "Anti Head Tax Act" a los estados con respecto al cobro de contribuciones sobre la venta de transportación aérea incluye el transporte aéreo de carga. El Tribunal de Circuito también confirmó la partida de costas y gastos legales.

Inconforme, el Municipio recurrió ante este Tribunal señalando como error la conclusión del Tribunal de Circuito de que la prohibición establecida en la ley federal en cuanto al cobro de contribuciones por la venta de transportación aérea incluía la venta de transporte aéreo de carga. El Municipio también impugnó la imposición de honorarios de abogado.[12]

Expedimos el recurso solicitado. La mayoría de este Tribunal resuelve que el estatuto federal en controversia no prohíbe que los estados puedan cobrar contribuciones a las líneas aéreas por el ingreso devengado por éstas en concepto de venta de transportación aérea de carga ("freight"). No estamos de acuerdo con dicha conclusión, y por ello disentimos.

II

---

[10]    Esta sección contiene las definiciones aplicables a todas las demás disposiciones de la Ley.

[11]    El recurso de apelación fue presentado ante este foro el 12 de abril de 1996. Para esa fecha estaba vigente el Plan de Reorganización Núm. 1 de la Rama Judicial, conocido como la Ley de la Judicatura de 1994, Ley Núm. 1 de 28 de julio de 1994. El Art. 3.002(b) de esta ley permitía recurrir ante este Tribunal mediante recurso de apelación directamente del Tribunal de Primera Instancia en casos en los cuales se planteara una cuestión constitucional sustancial.

[12]    Aunque en su señalamiento de error el Municipio alegó que no procedía la imposición de honorarios de abogado, en la sentencia de la cual se recurrió se impuso la cantidad de mil (1,000) dólares en concepto de costas, no de honorarios de abogado.

El Art. 2 de la Ley de Patentes Municipales autoriza a las asambleas municipales de todos los municipios del Estado Libre Asociado (en adelante E.L.A.) a imponer y cobrar patentes municipales a toda persona dedicada, dentro de los límites territoriales del municipio, a la prestación de cualquier servicio, o a la venta de cualquier bien, negocio financiero y/o cualquier industria o negocio. 21 L.P.R.A. § 651b. Según disposición expresa de la ley, "estará sujeta al pago de patentes toda persona dedicada con fines de lucro a la prestación de cualquier servicio, a la venta de cualquier bien, a cualquier negocio financiero o a cualquier industria en los municipios del E.L.A." 21 L.P.R.A § 651c.

De estas disposiciones se puede colegir que todo negocio operado con fines del lucro dentro de los límites territoriales de un municipio tiene la obligación legal de pagar patente municipal. Las únicas excepciones al pago de patentes son los negocios, asociaciones o entidades que según la sección 651h de la Ley de Patentes Municipales están exentas de dicho pago.

Aplicando las disposiciones de ley antes citadas, Burlington está obligada, bajo la Ley de Patentes Municipales, a pagar la correspondiente patente al Municipio de Carolina. Burlington es un negocio con fines de lucro, operado en los límites territoriales del Municipio de Carolina, y dedicado al servicio de transporte aéreo de carga, operación no contemplada bajo las excepciones enumeradas en la sección 651h. Así pues, se cumplen los requisitos para que una corporación o negocio esté obligado al pago de patente municipal. Sin embargo, la aplicación de la Ley de Patentes Municipales no dispone de este recurso. Veamos.

III

La patente municipal, aunque adopta la forma de un permiso o licencia para el ejercicio de una actividad económica, realmente constituye un impuesto que va a variar de acuerdo al volumen de negocio[13] de la empresa tributada. American Express Co. v. Mun. de San Juan, 120 D.P.R. 339, 346 (1988). Por tanto, la patente municipal es realmente una contribución sobre ingresos.

Por otra parte, el "Anti Head Tax Act" establece una prohibición específica con respecto al cobro de contribuciones por parte de los estados a las líneas aéreas por concepto de venta de transporte aéreo. Específicamente la § 1513 dispone lo siguiente:

Prohibición; exención

(a) Ningún estado (o subdivisión política de dicho estado, incluyendo el Estado Libre Asociado de Puerto Rico, Islas Vírgenes...) impondrá o

---

[13] Volumen de negocios significa los ingresos brutos que se reciben o se devenguen por la prestación de cualquier servicio, por la venta de cualquier bien, o por cualquier otra industria o negocio (...) 21 L.P.R.A. § 651a(7)(A)(i).

recaudará una contribución, tarifa, "head charge", u otra carga, directa o indirectamente, sobre las personas que viajan en el comercio aéreo o sobre el transporte de personas que viajan en el comercio aéreo o sobre la venta de la transportación aérea o sobre los ingresos brutos devengados.

(b) Nada en esta sección prohibirá a un estado... incluyendo al Estado Libre Asociado de Puerto Rico... imponer o recaudar contribuciones que no estén enumeradas en la subsección (a) de esta sección incluyendo contribuciones sobre la propiedad, contribuciones sobre ingresos, contribuciones de franquicia, y contribuciones sobre la venta o uso de bienes o servicios.[14]

Vemos pues como esta ley prohíbe expresamente a los estados imponer contribuciones a las líneas aéreas por ingresos devengados de las actividades enumeradas en la referida § 1513(a). Por tanto, cualquier ley estatal que autorice la imposición de una contribución a las líneas aéreas en esos casos no puede prevalecer, de acuerdo a la doctrina de campo ocupado.

La doctrina de campo ocupado surge del Artículo VI, § 2 de la Constitución de los Estados Unidos, y establece que en caso de existir conflicto entre una ley estatal y una federal, la ley federal habrá de prevalecer, siempre y cuando ésta haya sido válidamente aprobada. Vease: Maryland v. Louisiana, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981); Jones v. The Rath Packing Co., 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); Huron Portland Cement Co. v. City of Detroit, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960).

La intención de ocupar el campo puede surgir de manera explícita, o sea, de la letra clara del estatuto, o implícitamente, de acuerdo a la estructura y el propósito de la ley. Pacific Gas & Elec. v. Energy Resources Comm'n, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983); City of Burbank v. Lockheed Air Terminal, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1972). Vease además, Vega v. Yiyi Motors, Op. de 30 de junio de 1998, 98 JTS 97 (1998). En este caso, la intención de ocupar el campo en esta materia surge explícitamente del lenguaje claro de la § 1513(a).

No obstante, en virtud de la § 1513(b), la ley federal no prohíbe a los estados imponer todo tipo de contribución a las líneas aéreas. El Tribunal Supremo de los Estados Unidos ha resuelto que "no vemos ninguna paradoja entre las secciones 1513(a) y 1513(b). La sección 1513(a) prohíbe ('preempts') un número limitado de contribuciones y cargas estatales, incluyendo las contribuciones de ingreso bruto ('gross receipts taxes') sobre la venta de transportación aérea o el transporte de personas viajando en el comercio aéreo. De otra parte, la sección 1513(b) clarifica la visión del Congreso de la contribución que los estados todavía pueden imponer sobre las aerolíneas y porteadores aéreos, o sea, 'otras contribuciones que no estén enumeradas en la subsección (a)', tales como contribuciones sobre la propiedad." Aloha Airlines Inc. v. Director of Taxation, 464 U.S. 7,12, 78 L. Ed. 2d 10, 104 S. Ct. 291 (1983), según citado en Iberia v. Secretario de Hacienda, 135 D.P.R. 57 (1994).

En este sentido, los Estados han podido imponer válidamente a las líneas aéreas contribuciones sobre: (1) la propiedad, Aloha Airlines Inc., supra; (2) la porción de ingresos por concepto de transportación terrestre de carga se transporta en parte por avión, (1998); Kamikawa v. United Parcel Service, Inc., 966 P.2d 648 (1998); y (3) la gasolina utilizada por los aviones; Wardair Canada v. Florida Department of Revenue, 477 U.S. 1 (1986).

Como vemos, la ley federal no prohíbe la imposición de todo tipo de contribución a las líneas aéreas por parte de los estados.  En virtud del "Anti-Head Tax Act", los Estados y Puerto Rico están imposibilitados de imponer contribuciones a las líneas aéreas por concepto de:

(1)  las personas que viajan en el comercio aéreo;
(2)  el transporte de personas que viajan en el comercio aéreo;
(3)  la venta de transportación aérea; y
(4)  los ingresos brutos devengados de éstas [actividades].

Lo que corresponde determinar entonces es si el negocio de Burlington está contemplado dentro de alguna de las áreas que, según la ley, está exenta de pago de contribuciones estatales.  De ser la contestación en afirmativa, el Municipio no podría imponerle a la línea aérea el pago de patente municipal, ya que ésta es una contribución sobre ingresos.

Según surge de los hechos, Burlington se dedica principalmente al transporte aéreo de carga, y sobre los ingresos derivados de esa actividad económica estuvo pagando las patentes municipales por las cuales ahora solicita el reintegro.  Así, por la propia naturaleza del negocio de Burlington, la línea aérea no está exenta del pago de contribución estatal bajo las excepciones (1) y (2) antes enumeradas. Por consiguiente, de la única forma en que Burlington podría estar exenta bajo el "Anti-Head Tax Act" del pago de contribución estatal, que en este caso es la patente municipal, es si el negocio de transporte aéreo de carga estuviese incluido en la excepción de "venta de transportación aérea." Veamos.

IV

Para hacer una determinación acertada de si efectivamente la "venta de transportación aérea" ("sale of air transportation") incluye no solamente el transporte de pasajeros, sino también el transporte de propiedad, es necesario hacer una síntesis, no solamente de la ley y la jurisprudencia aplicables, sino también de historial que precede a la aprobación del "Anti-Head Tax Act".

A.

---

[14] Traducido del inglés según el caso Iberia v. Secretario de Hacienda,

En el 1970, el gobierno federal aprobó el "Airport and Airway Development Act" de 1970, Ley Púb. Núm. 91-258, 84 Stat. 219, y el "Airport and Airway Revenue Act" de 1970, Ley Púb. Núm. 91-258 § 208, 84 Stat. 236, en un esfuerzo por mejorar los servicios de transportación aérea. Como parte de estas leyes, el Congreso procedió a establecer el "Airport and Airway Trust Fund" con el propósito de canalizar recursos federales hacia proyectos estatales de expansión y mejoramiento de aeropuertos. Originalmente este fondo recibía sus ingresos de varias contribuciones federales sobre la aviación como por ejemplo, sobre la venta de boletos, pasajeros, y carga. A consecuencia de la creación de este fondo federal, surgió gran incertidumbre con relación a la autoridad estatal para imponer contribuciones. Véase Aloha Airlines v. Director of Taxation, supra; Iberia v. Secretario de Hacienda, supra.

En el 1972, el Tribunal Supremo de Estados Unidos resolvió en Evansville-Vanderburgh Airport Authority Dist. v. Delta Airlines. Inc., 405 U.S. 707, 31 L. Ed. 2d 620 (1972), que ni la Cláusula de Comercio, ni el "Airport and Airway Development Act" prohibían la imposición de contribuciones ("head taxes") estatales. En respuesta a esta decisión, el Congreso aprobó en 1973 el "Airport Development Acceleration Act", Ley Púb. 93-44, 87 Stat. 90, la cual incluye la disposición en controversia, conocida como el "Anti-Head Tax Act", 49 U.S.C.A. § 1513, con el propósito principal de evitar la imposición de contribuciones múltiples (federales y estatales) a las líneas aéreas.

B.

Como ya hemos visto, en virtud de la § 1513(a), la venta de transportación aérea es una de las actividades de negocio que está exenta de pago de contribución estatal. Por otra parte, la 49 U.S.C.A. § 1301(a)(10)[15] define transportación aérea ("air transportation") como que incluye: transportación aérea interestatal, de ultramar y al extranjero, o la transportación aérea de correo.

Por otra parte, la § 1301(a)(24) indica lo siguiente:

> (24) "Transportación aérea interestatal", "transportación aérea de ultramar" y "transportación aérea al extranjero", significa respectivamente, el transporte por avión de personas o propiedad como empresa de transporte público, por compensación o alquiler,[16] o el transporte de correo por avión, en comercio entre:

> (a) un lugar en cualquier Estado de Estados Unidos o el Distrito de Columbia, y un lugar en cualquier otro Estado de Estados Unidos o el Distrito de Colombia; (...) o entre lugares en el mismo territorio o posesión de Estados Unidos o el Distrito de Columbia.

---

135 D.P.R. 57 (1993).

[15] Recodificada como la § 40102(a)

[16] Énfasis suplido. Traducción nuestra.

(b) un lugar en cualquier Estado de Estados Unidos, o el Distrito de Columbia, y cualquier lugar en un territorio o posesión de los Estados Unidos y un lugar en cualquier otro territorio o posesión de los Estados Unidos; y

(c) un lugar en los Estados Unidos y cualquier otro lugar fuera de Estados Unidos; ya sea que ese comercio se mueva totalmente por avión o en parte por avión y en parte mediante otras formas de transportación.

Al examinar la definición de transportación aérea, vemos que la misma incluye la transportación aérea interestatal, de ultramar y al extranjero. A su vez, la definición de estas tres formas de transportación, según la § 1301(24) de la ley, incluye el transporte de personas o de **propiedad**. Con base a estas disposiciones, Burlington alega que el "Anti-Head Tax Act" proscribe el cobro de contribuciones estatales sobre el transporte aéreo de carga.

C.

Este Tribunal no ha atendido ninguna controversia con relación a la interpretación del "Anti-Head Tax Act". El único caso en el cual hemos hecho referencia a esta sección lo es Iberia v. Secretario de Hacienda, supra. En este caso la controversia estaba planteada en términos de la imposición de contribuciones sobre la propiedad mueble localizada en una oficina de venta de boletos de una línea aérea internacional, y se hizo referencia a esta ley para indicar que el gobierno federal permite a los estados la imposición de contribuciones sobre la propiedad mueble de las líneas aéreas. No se atendió la controversia sobre si la venta de transportación aérea incluye o no el transporte aéreo de carga.

La jurisprudencia federal a estos efectos tampoco es abundante, y hay posiciones encontradas sobre las contribuciones estatales proscritas por la 49 U.S.C.A. §1513(a). El Tribunal Supremo de los Estados Unidos ha enfrentado varias controversias que tienen que ver con el "Anti-Head Tax Act". En el caso de Aloha Airlines, supra, resolvió que no se podía imponer contribución estatal sobre los ingresos brutos de las líneas aéreas directamente, ni tampoco imponer contribuciones sobre la propiedad de las líneas aéreas tomando como base para la imposición de dicha contribución el ingreso bruto de las líneas aéreas por concepto de venta de transportación.

La Corte Federal también trató el tema de las contribuciones estatales permitidas bajo la 49 U.S.C.A. § 1513 en Wardair Canada, Inc. v. Florida Dept. of Revenue, 477 U.S. 1, 106 S.Ct. 2369, 91 L.Ed.2d 1 (1986). Allí se resolvió que el "Anti-Head Tax Act" no impedía el que los Estados cobraran contribuciones sobre los ingresos devengados de la venta de gasolina para aviones.[17]

---

[17] En 1994, el Tribunal Supremo de los Estados Unidos trató otra controversia relacionada con el "Anti-Head Tax Act" en el caso Northwest

Vemos pues como en los casos de <u>Aloha Airlines</u> y <u>Wardair</u> la Corte Suprema no trata el tema sobre si la "venta de transportación aérea" incluye la transportación aérea de carga. Examinemos pues la jurisprudencia estatal en relación con el "Anti-Head Tax Act".

En <u>State ex rel. Arizona Dept. of Revenue</u> v. <u>Cochise Airlines</u>, 626 P.2d 596 (1980), se resolvió que el "Anti-Head Tax Act" prohibía la imposición de contribuciones sobre la venta de transportación aérea de personas, pero no prohibía la imposición de contribuciones estatales a la venta de transportación aérea de carga. Cabe señalar que ninguna otra corte estatal o federal parece haber adoptado esta interpretación.[18] En <u>Travel Services, Inc.</u> v. <u>Government of the Virgin Islands</u>, 904 F.2d 186 (3rd. Circ. 1990), el tribunal, aunque hizo mención de la conclusión a la cual llegó la corte en <u>Cochise</u>, no la adoptó expresamente, ni hizo ningún señalamiento al respecto, ya que en este caso la controversia era si podía válidamente imponerse una contribución a los agentes de viajes sobre la comisión obtenida por éstos en la venta de pasajes.

Otras cortes federales han sostenido que la venta de transportación aérea incluye el transporte aéreo de carga. En <u>Airborne Freight Corporation</u> v. <u>New York State Department of Taxation and Finance</u>, 511 N.Y.S. 2d 993 (1987), confirmado en 527 N.Y.S. 2d 107 (1988), el tribunal de Nueva York resolvió que la actividad de "Airborne Freight Corporation", que era un transportista aéreo de carga ("air freight forwarder"), estaba cubierta bajo el concepto de venta de transportación aérea. Igualmente, en <u>Air Transportation Association of America</u> v. <u>Department of Revenue of the State of Florida</u> (opinión no publicada pero que obra en el expediente del caso) el tribunal determinó que según la definición de transportación aérea, resulta claro que este término incluye los servicios de transportación de carga, y por consiguiente, la prohibición establecida en la ley federal no está limitada al transporte de personas.

Por otra parte, existe jurisprudencia que, aunque no atiende directamente el "issue" planteado en este caso, es relevante para nuestro análisis. En los casos de

---

<u>Airlines, Inc.</u> v. <u>County of Kent. Mich.</u>, 114 S.Ct. 855, 570 U.S. 355, 127 L.Ed. 2d. 183. En este caso, varias líneas aéreas estaban impugnando el pago de ciertos derechos sobre el uso del aeropuerto. La Corte Suprema determinó que, bajo la 49 U.S.C.A. § 1513(b) los Estados pueden imponer el pago de derechos sobre el uso de las instalaciones del aeropuerto siempre que dicha imposición no resulte irrazonable o discriminatoria. El Tribunal determinó en ese caso que no había prueba suficiente en récord como para determinar si la imposición del pago de derechos por el uso de las instalaciones del aeropuerto era irrazonable.

[18]     En la nota al calce número 11 del caso de <u>Aloha Airlines</u>, <u>supra</u>, el Tribunal Supremo de los Estados Unidos hizo referencia al caso de <u>Cochise</u>, al llegar a la siguiente conclusión: "we join the state courts of Alaska and New York in their view that 1513(a) proscribes the imposition of state and local taxes on gross receipts derived from air transportation of persons in air commerce". Como se puede apreciar, la referencia a <u>Cochise</u> es en el contexto único de esa conclusión, ya que la controversia principal en el caso de <u>Aloha</u> era la imposición de contribuciones estatales sobre el ingreso bruto de las líneas aéreas en concepto de venta de transportación aérea de pasajeros. Así, no puede colegirse esta referencia a <u>Cochise</u> como un pronunciamiento de dicho foro en cuanto a que el estatuto federal en controversia permite que los estados impongan contribuciones a las líneas aéreas por la venta de transportación aérea de carga.

_Kamikawa_ v. _Lynden Air Freight, Inc._, 968 P.2d 653 y _Kamikawa_ v. _United Parcel Services_ (UPS), 966 P.2d. 648, el tribunal de Hawaii, sin atender específicamente la controversia sobre si el concepto "venta de transportación aérea" incluye transportación aérea de carga, resolvió que el estado de Hawaii tenía derecho a imponerles a Lynden y a UPS contribuciones únicamente sobre la porción de transportación terrestre de carga que viajaba parcialmente por avión. El tribunal de Hawaii no pone en duda que los servicios de transportación aérea de carga que ofrecían Lynden y UPS estaban contemplados bajo la 49 U.S.C.A. § 1513(a), por lo cual el Estado no podía imponer contribuciones a esa actividad. Se puede colegir entonces que este tribunal, al igual que los de Nueva York y Florida, entiende que el concepto "venta de transportación aérea" incluye la transportación aérea de carga.

Igualmente, los comentaristas han sido parcos al discutir el tema de hasta dónde se extiende la prohibición del "Anti-Head Tax Act". No obstante, se ha llegado a la conclusión de que "[L]a sección 40116(b)(3)[19] concierne la 'venta de transportación aérea' (...) transportación aérea incluye el transporte de propiedad o mercancías. De este modo, vía la aplicación del 49 U.S.C. secciones 40116(b)(3) y(4 ), el 'Federal Aviation Act'[20], por sus propios términos, prohíbe a los estados imponer contribuciones por los ingresos brutos obtenidos de la venta de transportación aérea de mercancías".[21] Así, "[E]l 'Federal Aviation Act', tal como está codificado en 49 U.S.C. secciones 40116(b)(3) y (4), imposibilita a los estados imponer contribuciones sobre el ingreso bruto de un transportista aéreo de carga."[22]

Por último, deseamos llamar la atención a una comunicación del Secretario de Justicia de 28 de agosto de 1989, dirigida al entonces Secretario Interino del Departamento de Hacienda, con relación a la interpretación del estatuto federal en controversia. En esta carta el Secretario se retracta de una opinión suscrita por éste el 7 de mayo de 1987, en la cual había concluido que las líneas aéreas estaban sujetas al pago de patentes municipales según lo dispuesto en la Ley de Patentes y la 49 U.S.C.A. § 1513.[23]

---

[19] Anteriormente § 1513.

[20] El "Airport Development Acceleration Act" forma parte del Federal Aviation Act de 1958.

[21] Curtis A. Parker, _Just How Broad is the Federal Aviation Act's Ban on the State Taxation of Air Commerce_. 9-MAY J. Multistate Tax'n 28, 32-33. (1999).

[22] Curtis, _op. cit._, pág. 35.

[23] Esta opinión del Secretario de Justicia no está publicada, ni aparece en el expediente del caso. No obstante, en la carta suscrita por el entonces Director de Finanzas del Municipio de 1 de junio de 1988, se hace referencia a dicha opinión y se cita la misma como uno de los fundamentos para denegar la solicitud de reintegro de Burlington. Por otra parte, la opinión del

En la opinión de 28 de mayo, se explica la posición del Municipio de Carolina en relación con el cobro de patentes municipales a las líneas aéreas. El Secretario expone lo siguiente sobre la posición del Municipio de Carolina:

> Nuestra Asesoría Legal [del Municipio] es de opinión de que al momento no hay manera de evitar la prohibición de la sección 1513 del Título 49 del "United States Code" por cuanto dicha sección prohíbe a los estados de imposiciones directas o indirectas en ingreso bruto derivado de la transportación aérea (...)
>
> Ante la realidad del caso de <u>Aloha</u> y el caso <u>Iberia</u>[24], por más que desearamos [sic] aplicar la Ley de Patentes Municipales a las Líneas Aéreas que realicen parte de sus negocios en Carolina, lamentablemente **estamos impedidos de cobrarle éstas por concepto de carga aérea y venta de pasajes**. (Énfasis suplido).

Luego de hacer referencia a estas expresiones, el Secretario señala que "considerando los señalamientos que preceden (...) entiendo que en la actualidad los fundamentos que sustentan la Opinión del Secretario de Justicia de 7 de mayo de 1987 no están firmemente respaldados por el desarrollo jurisprudencial mencionado".[25] Así, el Secretario concluyó que no se podía imponer una contribución con base a ingreso bruto del negocio de transportación aérea, porque la ley federal lo impedía.

De acuerdo a toda la exposición doctrinal que antecede, examinemos el caso de autos.

V

Al analizar los motivos tras la aprobación del "Airport Development Acceleration Act", y específicamente, de la 49 U.S.C.A. § 1513(a) ("Anti-Head Tax Act"), las definiciones de la ley de los conceptos "transportación aérea interestatal", "transportación aérea de ultramar" y "transportación aérea al extranjero", y la interpretación jurisprudencial prevaleciente, llegamos a la conclusión de que el concepto "venta de transportación aérea" incluye la transportación aérea de carga.

Como hemos visto, el propósito del "Anti-Head Tax Act" fue evitar la doble tributación a las líneas aéreas. Además, de la jurisprudencia expuesta se puede colegir que cuando los tribunales han sostenido la imposición de contribuciones estatales a las líneas aéreas, han sido contribuciones por la propiedad mueble, la porción de

---

Secretario de Justicia de 28 de agosto de 1989, la cual tampoco está publicada, pero sí obra en el expediente, el propio Secretario hace referencia a la opinión de 7 de mayo de 1987.

[24] El caso al cual se hace referencia en este párrafo es <u>Iberia Líneas Aéreas</u> v. <u>Municipio de Carolina</u>, Civil Núm. 82-3531, 82-3538 y 83-1706, resuelto en 12 de enero de 1984 por el Tribunal Superior de Carolina, en el cual se determinó que el Municipio estaba impedido según la § 1513(a) de cobrar patentes municipales sobre el volumen de negocios de carga aérea de Iberia.

[25] El desarrollo jurisprudencial al cual se refería el Secretario eran los casos de <u>Aloha Airlines</u>, <u>supra</u>, e <u>Iberia Línea Aéreas</u> mencionados en la nota al calce que precede.

transportación terrestre de pasajeros o carga, gasolina, etc., o sea, actividades que no se pueden considerar transportación aérea.

Por otro lado, con excepción del caso de Cochise, no hemos encontrado caso alguno en el cual se haya sostenido una contribución impuesta por un Estado a una línea aérea por concepto de transporte de carga.  Cabe señalar que el análisis del caso de Cochise no ha sido seguido por las cortes estatales y federales.  El desarrollo jurisprudencial y la doctrina tienden a indicar que el concepto "venta de transportación aérea" incluye el transporte aéreo de carga.

Además, la propia ley establece que la definición de los conceptos "transportación aérea interestatal", "transportación aérea de ultramar" y "transportación aérea extranjera" incluye la transportación de pasajeros y **propiedad**.  Así, no es difícil concluir que cuando la ley se refiere a la "venta de transportación aérea", ese concepto incluye la venta de transportación aérea de carga, en cuanto al carga es propiedad, y la definición de transportación aérea incluye precisamente el transporte de propiedad, en adición al transporte de pasajeros y correo.

Por último, según se desprende de la Opinión del Secretario de Justicia de 28 de agosto de 1989, los asesores legales del propio Municipio entienden que la ley federal proscribe el cobro de contribuciones tanto por la carga aérea como por la venta de pasajes. Por los propios términos de la opinión del Secretario, éste también adopta dicha conclusión.

Concluimos pues que Burlington, como línea aérea dedicada al transporte de carga entre Puerto Rico, Estados Unidos y el extranjero, está exenta, bajo el "Airport Development Acceleration Act" del pago de patente municipal al Municipio por concepto de los ingresos brutos devengados por la línea aérea en la venta de transportación aérea de carga.  A la luz del desarrollo jurisprudencial y doctrinal en esta área, entendemos que el concepto venta de transportación aérea incluye la transportación de carga.  En consecuencia  procede reintegrar a Burlington la cantidad de $51,056 por concepto de las patentes municipales pagadas, más los intereses correspondientes.[26]

VI

En su segundo señalamiento de error, el Municipio sostiene que no procedía la imposición de honorarios de abogado al Municipio.[27]

---

[26]     **De acuerdo con la § 651h de la Ley de Patentes Municipales, los reintegros que se concedan devengarán intereses a razón del seis por ciento (6%) anual.**

[27]     Como ya señaláramos, a pesar de que el Tribunal de Circuito confirmó la imposición de costas y gastos hecha por el tribunal de instancia, no ofreció fundamento alguno para ello.

Según ya hemos señalado, este caso se resolvió mediante el mecanismo procesal de sentencia sumaria. A la página nueve (9) de la sentencia dictada por el tribunal de instancia, se dispuso que el Municipio, además de devolver las patentes pagadas, tenía que pagarle a Burlington la cantidad de mil (1,000) dólares por concepto de "costas y gastos legales". Como vemos, los mil (1,000) dólares impuestos al Municipio no fueron en concepto de honorarios de abogados,[28] sino como costas. La concesión de costas en un pleito es materia gobernada por la Regla 44 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 44.

A estos efectos, la Regla 44.1 dispone:

> (a) Las costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación, excepto en aquellos casos en que se dispusiera lo contrario por ley o por estas reglas. **Las costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que un litigante debe reembolsar a otro**. (Énfasis suplido).

Según esta regla, las costas se le conceden a la parte a cuyo favor se resuelve el pleito, en virtud de los gastos necesarios en los cuales dicha parte incurrió en el trámite del mismo.

Por otra parte, la § 651h de la Ley de Patentes Municipales indica que "los créditos o reintegros que se concedan (...) y las costas, si las hubiere, será acreditado o pagado por el Director de Finanzas (...)". Así, la Ley de Patentes Municipales contempla la posibilidad del pago de costas por parte de un Municipio. No obstante, se indica que éstas se pagarán si las hubiere. O sea, la concesión de dichas costas no es automática, se rige por las Reglas de Procedimiento Civil.

La Regla 44.1(b) de las de Procedimiento Civil, por su parte, establece el siguiente método para reclamar costas:

> (b) La parte que reclame el pago de costas presentará al tribunal y notificará a la parte contraria, dentro del término de diez (10) días contados a partir del archivo en autos de copia de la notificación de la sentencia, una relación o memorando de todas las partidas de gastos y desembolsos necesarios incurridos durante la tramitación del pleito o procedimiento. El memorando se presentará bajo juramento y se consignará que según el leal saber y entender del reclamante o de su abogado, las partidas de gastos incurridas son correctas y que todos los desembolsos fueron necesarios para la tramitación del procedimiento.

De una mera lectura de los incisos (a) y (b) de la Regla 44.1 se desprende que, aunque la parte victoriosa en un pleito tiene derecho a cobrar costas, la concesión de las mismas no es automática. "Después de dictada la sentencia, la parte victoriosa [debe] presenta[r] un memorando jurado consignando sus costas a la parte contraria. Ese memorando se debe presentar dentro de un término de 10 días a partir de la fecha en que

---

[28] De haberse impuesto honorarios de abogado al Municipio, esto hubiera sido claramente incorrecto, ya que este Tribunal ha establecido que como regla general no procede imponer honorarios de abogado ni al Estado ni a los Municipios. Véase De León v. Secretario de Instrucción, 116 D.P.R. 687 (1985); Colondres v. Bayrón, 114 D.P.R. 833 (1983).

se notifique la sentencia".[29]  Este término de diez (10) días es improrrogable, de acuerdo a la Regla 68.2[30] y el caso <u>Pereira</u> v. <u>I.B.E.C.</u>, 95 D.P.R. 28 (1967).  Por tanto "el tribunal carece de poder o autoridad legal para aprobar cualquier memorándum (sic) de costas presentado tardíamente y/o uno suplementario para adicionar partidas omitidas en el memorando original." [31]

Así, aunque la imposición de costas a la parte perdidosa en un pleito es mandatoria, **no procede concederlas sin que dicha parte haya presentado un memorando de costas, detallando los gastos en los cuales incurrió dentro del término de diez (10) días provisto por ley**.  El procedimiento para reclamar costas "tiene como objeto determinar o concretar las mismas".[32]  En ausencia de un memorando de costas, los tribunales no pueden determinar cuáles gastos se concederán como costas y hacer un cálculo acertado de a cuánto ascienden éstas, porque sin el memorando no hay constancia alguna de los gastos específicos reclamados.

Por otro lado, la Regla 44.1(b) establece que cualquier parte que no esté de acuerdo con las costas reclamadas, puede impugnarlas en todo o en parte, en el término de diez (10) días a partir de habérsele notificado el memorando.  Así, el requisito de presentar un memorando de costas no solamente es necesario para que el tribunal pueda hacer una determinación acertada de la cantidad a conceder por ese concepto, sino también para que la parte de quien se reclaman dichas costas pueda hacer valer el derecho que le concede la propia Regla 44.1(b) a impugnar cualquier partida que considere improcedente.

A la luz de esta norma, el tribunal de instancia actuó incorrectamente al imponerle al Municipio, en la sentencia, el pago de mil (1,000) dólares en costas, ya que Burlington no reclamó las mismas según el procedimiento establecido en las Reglas de Procedimiento Civil.

VII

Por las razones que anteceden disentimos de la Opinión Mayoritaria.  Confirmaríamos la sentencia del Tribunal de Circuito en aquella parte que determina que Burlington está

---

[29]  Rafael Hernández Colón, <u>Derecho Procesal Civil</u>, Michie de Puerto Rico, San Juan, 1997, pág. 286.

[30]  En lo pertinente, esta regla dispone que: "Cuando por estas reglas (...) se requiera o permita la realización de un acto en o dentro de un plazo especificado, el tribunal podrá, por justa causa, en cualquier momento y en el ejercicio de su discreción, (1) (...) ordenar que se prorrogue o acorte el término originalmente prescrito o según prorrogado por orden anterior; o (2) (...) permitir que el acto se realice si la omisión se debió a la negligencia excusable; **pero no podrá prorrogar o reducir el plazo para actuar bajo las disposiciones de las Reglas 43.3, 44.1 (...)**".  (Énfasis suplido).

[31]  José A. Cuevas Segarra, <u>Tratado de Derecho Procesal Civil</u>, Tomo II. Publicaciones JTS, San Juan, 2000, pág. 723.  Véase, además, <u>Pereira</u> v. <u>I.B.E.C.</u>, <u>supra</u>, pág. 82; <u>Piñero</u> v. <u>Martínez Santiago</u>, 104 D.P.R. 587, 590 (1976).

[32]  Hernández Colón, <u>op. cit</u>

exenta del pago de contribución por el negocio de transporte aéreo de carga, por lo que procede el reintegro de las contribuciones pagadas por Burlington al Municipio, y revocaríamos dicha sentencia en cuanto a la imposición de mil (1,000) dólares en costas y gastos.

Miriam Naveira de Rodón<br>
Juez Asociada