Varona Méndez, Jueza Ponente
*850 TEXTO COMPLETO DE LA SENTENCIA
Floridita, Inc. (Floridita) nos pide que revisemos, por vía del certiorari, -que acogemos parcialmente como apelación-, una sentencia parcial dictada por el Tribunal de Primera Instancia que desestimó la demanda incoada por ésta (Floridita) contra la Asociación de Condómines Borinquen Tower II, su Junta de Directores y Presidenta (Asociación), Edith Santiago, Presidente y Fulano de Tal. Asimismo, revisamos por vía del certiorari una resolución en la que se concedieron a favor de la Asociación las costas y honorarios de abogados del pleito. Pol-los fundamentos que habremos de discutir, se confirma la sentencia dictada y se expide auto de certiorari, para revocar la imposición de costas, confirmar la imposición de honorarios de abogado y devolver el Tribunal de Primera Instancia para que evalúe la suma a imponerse por dicho concepto.
I
La apelante Floridita es una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico y dueña del Restaurante Buenos Ayres Bar & Grill, que opera en los locales 10, 11 y 11A del Condominio Borinquen Towers II en calidad de arrendataria. El Condominio Borinquen Tower II es un edificio de naturaleza mixta que consiste de unidades de viviendas y unidades comerciales, organizado bajo el régimen de propiedad horizontal. Dicho condominio tiene, como cuerpo directivo, a la Asociación de Condominos Borinquen Tower II.
En el contrato de arrendamiento suscrito por Floridita, ésta se obligó a pagar el servicio de recogido de basura. El titular de los locales arrendados por Floridita es L & W, Inc. corporación que autorizó a María Isabel Marty Ravena, mediante resolución corporativa de 1 de octubre de 2001, a representarle en las reuniones de la Asociación de Condominos Borinquen Tower II. Asimismo, le autorizó a representar a L & W, Inc. en los procedimientos ante el Departamento de Asuntos del Consumidor en los que L & W, Inc., fuese una parte o estuviese afectada y presentar a su nombre los documentos legales necesarios para cumplir con los términos de dicha resolución. María Isabel Marty Ravena es la presidenta de Floridita.
El 24 de abril de 2006, la Sra. Ada L. Sánchez, en calidad de Administradora de la Asociación, notificó a Floridita que adeudaba a la Asociación la suma de $1,733.63. Posteriormente le envió otra notificación de deuda por $3,301.34.
El 9 de mayo de 2006, la Sra. María Isabel Marty, en su calidad de presidenta Floridita Inc., le dirigió una carta a la Asociación de Condominos Borinquen Tower II mediante la que solicitó un espacio para colocar un contenedor de basura “en un área donde ustedes nos asignen o [sic] ocupar uno de nuestros estacionamientos asumiendo nosotros el costo del recogidoAdemás, pidió que le informaran si el reglamento del condominio dispone la obligación de la Asociación de Condominos de recoger la basura de los establecimientos comerciales. Mediante comunicación de 31 de mayo de 2006, la Sra. Edith Santiago, Presidenta de la Junta de Directores de la Asociación, denegó la petición del espacio para el contenedor, ofreció los fundamentos para dicha decisión y le indicó que la obligación de la Asociación de recoger la basura no surgía del reglamento, sino de la facultad de la Junta de Directores de administrar todas las áreas comunales que pertenecen a la torre, incluyendo la administración del área comercial.
El 30 de junio de 2006, Floridita presentó demanda para impugnar la determinación de la Asociación *851 mediante la que se le denegó a Floridita su pedido de colocar su propio contenedor de basura y hacerse cargo del recogido de ésta. La Asociación fue emplazada el 7 de agosto de 2006.
El 10 de agosto de 2006, la Asociación sometió su contestación a la demanda; asimismo, reconvino a Floridita en reclamo de las cuotas de mantenimiento y pagos no realizados por concepto de recogido de basura. Por su parte, Floridita contestó la reconvención presentada y alegó que los acuerdos y decisiones del Consejo de Titulares o de la Junta de Directores no son finales, pues la ley permite su impugnación en los Tribunales. Además, alegó que la Asociación había actuado en contra de sus propios actos, ya que a otros comerciantes se les había concedido autorizaciones fuera del ámbito reglamentario.
El 25 de enero de 2007 se llevó a cabo ante el foro primario una vista de estado procesal, en la que la Asociación planteó que Floridita, al no ser titular de los locales, carecía de capacidad jurídica para demandar, pol-lo que procedía la desestimación de la demanda. En su comparecencia, la Asociación anunció que habría de presentar una solicitud de sentencia sumaria.
El 1ro. de marzo de 2007, la Asociación sometió una moción de sentencia sumaria, en la que argüyó que Floridita carecía de legitimación para impugnar los acuerdos de la Asociación. Según planteó, la impugnación de los acuerdos de una Asamblea sólo lo pueden ejercer el titular, una persona debidamente autorizada por éste y según el procedimiento dispuesto por la Ley de Condominios. Adujo entonces que, en virtud de First Federal v. Asociación Cond., 114 D.P.R. 426 (1983), el foro apropiado para impugnar cuotas contra el Consejo de Titulares es el Departamento de Asuntos del Consumidor (D.A.C.O.).. Argüyó, además, que al haber arrendado los locales, Floridita se había adherido al régimen de propiedad horizontal y a los reglamentos del condominio. Planteó, también, que la controversia no era justiciable por falta de legitimación de Floridita y por falta de acción legitimada.
El 9 de marzo de 2007, Floridita presentó su oposición a que se dictara sentencia sumaria, en la que adujo que aunque la demandante no era titular del local, su presidenta tenía un poder o proxy para representar al titular. Indicó que al existir una controversia entre las partes sobre hechos materiales del caso, no procedía que se dictara sentencia sumaria. Alegó que no existía evidencia de que la decisión que intentaba impugnar hubiese sido tomada por el Consejo de Titulares, sino por la Junta de Directores de la Asociación. Según expresó, la correcta interpretación del Artículo 42 de la Ley de Condominios, Ley 103 de 5 de abril de 2003, 31 L.P.R.A. et seq., permite la impugnación ante el Tribunal de las determinaciones, omisiones o actuaciones del Director de la Junta de Directores, del Presidente y del Secretarios concernientes a la administración de un inmueble “que no comprenda apartamientos destinados a vivienda o de titulares de apartamientos no residenciales en los condominios en donde exista por lo menos un apartamento dedicado a vivienda”.
El 15 de agosto de 2007, notificada el 24 de agosto de 2007, el foro de primera instancia dictó la sentencia sumaria parcial objeto de la apelación ante nos. El 4 de septiembre de 2007, Floridita solicitó determinaciones iniciales de hechos y de reconsideración, cuyas solicitudes fueron declaradas sin lugar el 7 de septiembre de 2007, notificadas el 20 de septiembre de 2007.
Oportunamente, la Asociación sometió un memorando de costas, en el que reclamó la suma de $3,600.00 por concepto de honorarios de abogado.
El 16 de septiembre de 2007, Floridita sometió su oposición al memorando de costas. Seguido, el foro primario dictó resolución el 21 de septiembre de 2007 en el que se dispuso: “Véase determinaciones de la Juez Ivonne Díaz Pérez de 7/sept./07 mediante la cual aprobó el memorando de costas”.
Inconforme, Floridita acudió ante nos para cuestionar la sentencia dictada. Aduce que el foro primario erró al desestimar sumariamente la demanda, sin celebrar una vista y sin darle oportunidad de acumular como parte *852 demandante al titular del local para que ratificara la impugnación. Asimismo, arguye que erró dicho foro al concluir que Floridita carece de legitimación activa para presentar su reclamo, al formular determinación de hechos probados sin haber celebrado vista y al aprobar el memorando de costas sometido por la Asociación, por la suma de $3,600, sin que se hubiese hecho ninguna determinación en la sentencia sobre temeridad ni ofrecerle oportunidad a Floridita para impugnar el memorando.
Con el beneficio de la comparecencia de ambas paites, estamos en posición de resolver.
II
Sobre la sentencia sumaría
La Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 36, regula el trámite de la sentencia sumaria. La referida regla dispone que procede dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. Esto será así, cuando de los documentos no controvertidos que se acompañan con la moción surge que no existe una legítima disputa de hecho a ser dirimida, y sólo resta aplicar el derecho. Audiovisual Lang. v. Sist. Est. Natal Hnos., 144 D.P.R. 563, 575 (1997).
En tal caso, el tribunal tendrá que: (1) analizar los documentos que acompañan la moción de sentencia sumaria, y los incluidos con la oposición y aquéllos que obren en el expediente del tribunal; y (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. Mgmt. Adm. Servs. Corp. v. E.L.A., 152 D.P.R. 599, 611 (2000).
Analizados estos criterios, el tribunal no dictará sentencia sumaria cuando: (1) existan hechos materiales controvertidos; (2) haya alegaciones afirmativas en la demanda que no hayan sido refutadas; (3) suija de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; o (4) como cuestión de derecho no procede. PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881, 913-914 (1994).
Cualquier duda en cuanto a si hay hechos pertinentes en controversia debe resolverse contra la parte que solicita la sentencia sumaria. Toda inferencia que se haga a base de los hechos y documentos que obren en los autos debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria. García v. Darex P.R., Inc., 148 D.P.R. 364, 382 (1999). Sólo procede dictar sentencia sumaria cuando el tribunal tiene ante sí la verdad sobre todos los hechos pertinentes y no hay verdadera controversia de hechos entre las partes. Hernández v. Bermúdez & Longo, S.E., 149 D.P.R. 543, 550 (1999). Cuando no existe una clara certeza sobre todos los hechos en controversia, no procede dictar sentencia sumaria. Mgmt. Adm. Servs. Corp. v. E.L.A., supra, a la pág. 610; Metrop. de Préstamos v. López de Victoria, 141 D.P.R. 844 (1996).
Ley de Condominios
En nuestra jurisdicción, el Régimen de Propiedad Horizontal está reglamentado por la Ley de Condominios de Puerto Rico, Ley Núm. 103 de 5 de abril de 2003, 31 L.P.R.A. see. 1291 et seq. (antes conocida como la Ley de Propiedad de Horizontal, Ley Núm. 104 de 25 de junio de 1958). Ésta promueve la política pública dirigida a favorecer la utilización de edificios multipisos sometidos al Régimen de la Propiedad Horizontal como unidades de vivienda, para aprovechar eficientemente los escasos terrenos disponibles en áreas densamente pobladas. Álvarez Figueredo v. González Lamela, 138 D.P.R. 958, 965 (1995).
Como parte de las particularidades de este régimen legal, se ha instituido en la persona de un Director o de una Junta de Directores la administración y representación de los intereses del Consejo de Titulares de los edificios sometidos bajo el mismo. Los miembros de la Junta, con su presidente o en la alternativa el Director, han *853 de ser electos por el Consejo de Titulares, organismo supremo del régimen que constituye el cuerpo deliberativo y normativo encargado de tomar las decisiones de trascendencia para los condominos. Consejo de Titulares v. Galerías Ponceñas, Inc., 145 D.P.R. 315, 327 (1998); Alvarez Figueredo v. González Lamela, supra, a la pág. 966; Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225, 253 (1978). El Consejo de Titulares lo componen la totalidad de los dueños de apartamientos y locales que componen un inmueble sometido al Régimen de Propiedad Horizontal. Arce v. Caribbean Plome Const., supra, pág. 252; Srio. Daco v. J. Condominos C. Martí, 121 D.P.R. 807 (1988).
La “Ley de Condominios", supra, estableció los mecanismos para tramitar los inevitables conflictos que surgen al residir en una estructura con elementos comunes diversos titulares. Junta de Directores v. González, res. en 27 de noviembre de 2006, 169 D.P.R. _, (2006), 2006 J.T.S. 185; Amill v. J. Dir. Cond. Pumarada, 156 D.P.R. 495 (2002); Srio. D.A.C.O. v. J. Condominos C. Martí, 121 D.P.R. 807 (1988).
La nueva de Ley de Condominios reafirmó en su Exposición de Motivos los principios básicos del régimen de propiedad horizontal y mantuvo las características fundamentales de éste. Entre éstos se encuentran el disfrute del apartamento como núcleo del régimen, el principio de que sea el Consejo de Titulares el organismo en el que resida el control último sobre las decisiones relacionadas con la administración del inmueble, el reconocimiento de la personalidad jurídica del referido Consejo, y la disponibilidad de un foro especializado para atender con agilidad los conflictos que puedan surgir entre los integrantes del régimen.
Además, se incluyen disposiciones que recogen los principios rectores que gobiernan nuestra horizontalidad; específicamente, se establece el requisito de agotar un procedimiento interno antes de recurrir al Tribunal o al Departamento de Asuntos del Consumidor para poder impugnar las acciones u omisiones de la Junta de Directores o del Consejo de Titulares, adoptando a la vez medidas para evitar la presentación de querellas frívolas. La Exposición de Motivos de la nueva ley nos revela que el legislador pretendió "mejorar y fortalecer aún más el régimen existente, como sistema revestido de interés público por la función social que desempeña en nuestro desarrollo urbano." Exposición de Motivos, Ley Núm. 103 de 5 de abril de 2003.
El Consejo de Titulares, a su vez, elige una Junta de Directores. Ésta compone el órgano ejecutivo de la comunidad de condominos con el deber de “[a]tender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen y en especial lo relativo a las cosas y elementos de uso común y los servicios generales, y hacer a estos efectos las oportunas advertencias y apercibimientos a los titulares”. Art. 38-D(a) de la Ley Núm. 104, supra, 31 L.P.R.A. sec. 1293b-4(a). Además, debe “[cjumplir y hacer cumplir las disposiciones de [la Ley de Propiedad Horizontal], del reglamento y los acuerdos del Consejo de Titulares". Art. 38-D de la Ley Núm. 104, supra, 31 L.P.R.A. sec. 1293b-4(i). Junta de Directores v. González, supra; Amill v. J. Dir. Cond. Pumarada, supra.
La “Ley de Condominios”, supra, dispone que las impugnaciones por los titulares de apartamentos destinados a viviendas con respecto a: (1) los acuerdos del Consejo de Titulares; y (2) de las determinaciones, omisiones o actuaciones del: (a) Director o de la Junta de Directores, (b) del titular que somete el inmueble al régimen que establece esta Ley, durante el período de administración inicial, (c) del Presidente y del Secretario; concernientes a la administración del inmueble, se presentarán ante el D.A.C.O. Véase Artículo 42, 31 L.P.R.A., Sec. 1292f.
La ley confirió jurisdicción exclusiva al D.A.C.O. para entender en la acciones de impugnación presentadas por los titulares respecto a los acuerdos del Consejo de Titulares y de las determinaciones, actuaciones u omisiones del Director o de la Junta de Directores, relacionados con la administración de inmuebles que comprendan por lo menos un apartamento destinado a vivienda. First Federal Savings v. Asociación de Condómines, 114 D.P.R. 426 (1983); Srio. D.A.C.O. v. J. Condóminos C. Martí, 121 D.P.R. 807, 816 (1988); Amill Bracer v. Junta de Dir. Cond. Pumarada, 2002 J.T.S. 44, Sentencia del 4 de abril de 2002.
*854 El Artículo 42(c) de la Ley de Condominios, 31 LPRA §1293f, establece que:

“La acción de impugnación de acuerdos, acciones u omisiones de la Junta de Directores, del Consejo de Titulares, con excepción de los realizados por el titular que somete el inmueble al régimen, que violen las disposiciones de este capítulo, de la escritura matriz o del Reglamento del condominio, prescribirá a los dos (2) años de haberse notificado el acuerdo, tomado la acción o de conocerse la omisión. Para los titulares que impugnen este tipo de acuerdo del Consejo de Titulares, el término se computará a partir de la notificación del mismo, siempre y cuando cumplan con los requisitos establecidos en el párrafo siguiente. ”

Conforme a ello, se ha interpretado que el Departamento de Asuntos del Consumidor tiene jurisdicción primaria exclusiva para entender en aquellas acciones de impugnación de acuerdos del Consejo de Titulares, y de las determinaciones, actuaciones u omisiones del Director o de la Junta de Directores relacionados con la administración de inmuebles sujetos al régimen que comprenden por lo menos un apartamento dedicado a vivienda. Amill Bracer v. Junta de Directores Condominio Pumarada, 156 D.P.R. _(2002), 2002 J.T.S. 44, a la pág. 899; Srio. DACO v. J. Condóminos C. Martí, 121 D.P.R. 807 (1988); First Fed. Savs. v. Asoc. de Condómines, 114 DPR 426, 434 (1983).
En lo que nos concierne, el Alt. 42 de la Ley de Condominios establece que todo titular que presente una querella ante cualquier tribunal o foro pertinente impugnando cualquier acción u omisión de la Junta de Directores, deberá demostrar que agotó el siguiente procedimiento:

“Haber solicitado por escrito la dilucidación de su reclamo ante la Junta de Directores y que ésta no atendió sus planteamientos en un plazo de treinta (30) días desde el acuse de recibo de la reclamación. Esta reclamación deberá presentarse ante la Junta dentro de los treinta (30) días siguientes a la fecha en que se tomó el acuerdo o determinación, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en que se recibe la notificación del acuerdo, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación. Si se tratare de una actuación u omisión perjudicial, el plazo para presentar la reclamación, será dentro de los treinta (30) días siguientes a la fecha en que el titular tenga conocimiento de tal actuación u omisión perjudicial.

La Junta podrá resolver el asunto o someterlo motu proprio al Comité de Conciliación, salvo que el titular haya requerido que su reclamación pase directamente a la consideración de dicho Comité. El Comité deberá resolver el asunto en el término de treinta (30) días desde que le fuera referida la reclamación del titular y en todo caso dentro de un término máximo de sesenta (60) días desde que el titular presentara su reclamo ante la Junta.

Al presentar su querella, el titular deberá certificar que su reclamación no fue atendida dentro de los términos anteriormente provistos o que la solución propuesta por la Junta o por el Comité de Conciliación le es gravemente perjudicial.

El foro competente ante el cual se presente la querella o reclamación podrá eximir al querellante del requisito anterior, de así ameritarlo la naturaleza del caso.

La acción de impugnación ante el foro apropiado de acuerdos y determinaciones que el titular estimase gravemente perjudiciales para él o para la comunidad de titulares deberá ejercitarse dentro de los treinta (30) días siguientes a la notificación por la Junta o por el Comité de Conciliación de una decisión adversa al titular, o dentro de los treinta (30) días desde que fuere evidente que la Junta o el Comité de Conciliación no habría de tomar acción frente a la reclamación del titular, o en cualquier caso luego de transcurridos noventa (90) días desde que el querellante presentara su reclamación ante la Junta. ...

*855 Para todo tipo de impugnación ante el tribunal o foro competente, incluidos asuntos que hubiesen requerido el consentimiento unánime de los titulares, el querellante deberá acreditar, además, que está al día en el pago de la totalidad de las deudas vencidas con el Consejo de Titulares, inclusive las derramas aprobadas. Este requisito no será de aplicación cuando la acción vaya dirigida a impugnar acuerdos relacionados con el establecimiento o la alteración de cuotas o derramas. [...] Art. 42, 31 L.P.R.A. sec. 1293f inciso (a)(2), cláusulas (A), (B), (C); inciso (d). ” (Enfasis nuestro)
En síntesis, en aquello que se relacione a las acciones para impugnar los acuerdos del Consejo de Titulares, las determinaciones del Administrador o de la Junta de Directores, la Ley de Propiedad Horizontal dispone que cualquier titular que estime que un acuerdo, determinación, omisión o actuación de éstos es gravemente perjudicial para él o para la comunidad de titulares o es contrario a la ley, a la escritura de constitución o al reglamento del condominio, puede impugnar los mismos en los tribunales, en el caso de los inmuebles que no comprenden apartamentos destinados a vivienda. Cuando se trata de inmuebles que comprendan al menos un apartamento destinado a vivienda, el acuerdo, determinación omisión u actuación deberá ser impugnado en D.A. C.O., siempre que el acuerdo impugnado sea interpuesto por el titular de un apartamento destinado a vivienda.
No obstante, quedó excluida de la jurisdicción del Departamento, las reclamaciones que surjan en condominios de uso exclusivamente comercial o profesional. Igualmente carece de jurisdicción en aquellos condominios donde sí existe por lo menos una unidad de vivienda, si la querella es interpuesta por un titular o grupo de titulares de apartamentos no residenciales. En estos casos, la jurisdicción corresponde al Tribunal de Primera Instancia. Ver Sección 26 del Reglamento sobre Condominios del Departamento de Asuntos del Consumidor, número 6728, de 26 de noviembre de 2003.
Expuesto hasta aquí el derecho aplicable, pasamos a la discusión de los errores aducidos por los apelantes.
III
Del recuento doctrinal arriba esbozados, surge claramente que el foro de primera instancia tiene jurisdicción para atender las impugnaciones de los acuerdos del Consejo de Titulares, del Administrador o de la Junta de Directores, cuando sean interpuestas por los titulares de apartamentos utilizados para fines comerciales, aun cuando se trate, como en el caso de autos, de un condominio de uso mixto.
La apelante Floridita aduce que erró el foro primario al disponer sumariamente de la demanda, sin celebrar una vista, en la que se dilucidaran las controversias sobre hechos materiales que existen en el caso. Específicamente, señala que el foro de primera instancia desestimó la demanda de Floridita, por ser arrendataria de los locales que ocupa y se rehusó a considerar que tenía “un poder” o “proxy” que le autorizaba a actuar a favor del titular. Asimismo, aduce que existen controversias de hechos que ameritan la celebración de un juicio en su fondo.
Al examinar cuidadosamente la oposición sobre sentencia sumaria presentada por la apelante ante el foro primario, surge que ésta cuestionó que se dictara sentencia sumaria y adujo que existen controversias sobre hechos materiales en el caso, pero no discutió cuáles hechos estaban en controversia. Acompañó con su oposición una resolución corporativa de L & W, Inc., que autoriza a la Sra. María Isabel Marty Ravena a representarle ante la Asociación de Condominos y ante el D.A.C.O. y un acta de una reunión de incorporadores de Floridita en la que se nombró a la Sra. Marty presidenta de Floridita, pero no discutió ni siquiera someramente, la pertinencia de dicho documento para fines de trabar una controversia sobre los hechos materiales del caso. Anejó también a su oposición una carta enviada por Floridita a la representación legal de la Asociación, en la que contesta otra de la Asociación requiriéndole el pago de las cuotas de recogido de basura.
Ante nos, aduce Floridita que su presidenta tenía un “poder” del dueño o titular del local, que representa un mandato que estuvo ejerciendo la Sra. Marty por varios años, por lo que resulta un contrasentido que ahora se *856 cuestione su legitimación para incoar la demanda. A base de esta inteipretación, aduce la apelante que la resolución corporativa otorgada a la Sra. Marty por L & W, Inc., le suplió la legitimación para presentar la demanda a nombre del titular.
No obstante, al revisar la referida resolución corporativa de L & W, Inc., nada hay en ésta que permitiera a la Sra. Marty representar a L & W, Inc. ante el foro judicial; tampoco se desprende que dicha autorización para representarle fue otorgada en función de que la Sra. Marty era la presidenta de otra corporación -Floridita- y que, por tanto, dicha autorización concedía a Floridita legitimación para instar acciones a su nombre.
En nuestra jurisdicción, las corporaciones debidamente inscritas tienen su propia personalidad jurídica y su propio patrimonio, distinto al de sus accionistas. Su personalidad empieza desde el instante mismo en que con arreglo a derecho, hubiesen quedado válidamente constituidas. Véase, Arts. 27-30, Código Civil, 31 L.P.R.A. 101-104; Ley General de Corporaciones de 1995, 14 L.P.R.A. see. 2601 et seq.\ 31 L.P.R.A. sec. 101; Sucn. Santaella v. Srio. de Hacienda, 96 D.P.R. 442, 451 (1968). Esto quiere decir que las corporaciones son entes con responsabilidad propia, ya que tienen una personalidad jurídica independiente a la de sus accionistas, miembros, directores u oficiales. D.A.C.O. v. Alturas Fl. Dev. Corp. y otros, 132 D.P.R. 905, 915 (1993); Srio. D.A.C.O. v. Comunidad San José, Inc., 130 D.P.R. 782, 797-798 (1992). De ahí que una resolución corporativa que autorizara a la Sra. Marty a actual' a nombre de L & W, Inc., no conlleva una autorización para actuar a Floridita, Inc., en ausencia de disposición expresa en la resolución corporativa.
En virtud de ello, resolvemos que aun reconociendo la existencia de una resolución corporativa a favor de la Sra. Marty, ello no constituye un hecho material que debió considerar el foro de primera instancia al dictar la sentencia apelada. Tampoco nos ha convencido la apelante de la existencia de controversia sobre otros hechos materiales que impidieran disponer de la controversia por la vía sumaria.
La apelante alega que incidió el foro primario al dictar sentencia sumaria, sin ofrecer una oportunidad para discutir la moción presentada. No tiene razón. El Tribunal Supremo ha resuelto que al considerar la moción de sentencia sumaria se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas presentadas por la parte promovente. Toda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a la misma, Mgmt. Adm. Servs. Corp. v. E.L.A., 152 D.P.R. 599 (2000). Cuando, entonces, de los documentos no controvertidos que se acompañan surge que no existe una legítima disputa de hecho a ser dirimida, que sólo resta aplicar el derecho, y que no se ponen en peligro los intereses de las partes, se dictará sentencia sin necesidad de que se celebre una vista en los méritos. E.L.A. v. Cole, 2005 JTS 55, res. el 13 de abril de 2005; Audiovisual Lang. v. Sist. Est. Natal Hnos., 144 D.P.R. 563 (1997). Como antes mencionáramos, Floridita no nos ha convencido de la existencia de hechos materiales en controversia que requirieran la celebración de vista. El error alegado no se cometió.
Tras analizar detenidamente las disposiciones de la Ley de Condominios, supra, precisa que coincidamos con el criterio del foro de instancia, respecto a la falta de legitimación de Floridita para presentar la acción judicial. Ello así, dado que es a los titulares de los apartamentos a quienes se les reconoció, en virtud del Artículo 42 de dicho cuerpo de ley, la capacidad para presentar la acción de impugnación de los acuerdos y determinaciones del Consejo de Titulares o del Director o de la Junta de Directores. En virtud de ello, procede confirmar la sentencia apelada.
Por último, la paite apelante reclama que incidió el foro apelado al declarar con lugar el memorando de costas, sin que hubiese determinado su temeridad en la sentencia y sin que se le diera oportunidad para cuestionar su contenido. Revisamos, por vía de certiorari, dicha determinación.
La Regla 44.1 (d) de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 44.1(d), provee para la concesión de costas *857 y para la imposición de honorarios de abogado. Respecto a la imposición de pago de los honorarios de abogado, dispone lo siguiente:

“En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. ”

Del texto de dicha norma procesal se desprende que la imposición de honorarios de abogado tiene que formar parte de los pronunciamientos del tribunal en su sentencia.
Se ha resuelto por nuestro.más Alto Foro, que incurre en temeridad aquella parte que hace necesario un pleito frívolo y obliga a la otra parte a incurrir en gastos innecesarios. P.R. Oil Co., Inc. v. Dayco Prod., Inc., opinión de 6 de abril de 2005, 2005 J.T.S. 47, pág. 1062; Torres Ortiz v. E.L.A., 136 D.P.R. 556, 565 (1994). Véase, Dr. José A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Tomo IV, Supl., Pub. JTS, 2005, pág. 234.
La imposición de intereses por temeridad y la imposición de honorarios de abogado por dicha actitud litigiosa, tienen el propósito de:

“[...] disuadir la litigación y alentar las transacciones, mediante sanciones a la parte temeraria que compensen los perjuicios económicos y las molestias producto de su temeridad sufrida por la otra parte. ”

Insurance Co. of P.R. v. Tribunal Superior, 100 D.P.R. 405, 411 (1972).
Valga señalar que los honorarios de abogado que se conceden por el tribunal en virtud de una sentencia, pertenecen'a la paite y no a su abogadoT-Es^decirrque'Son-aTavor-deHitigante y “no se conceden para compensar al abogado”. Tratado de Derecho Procesal Civil, supra, pág. 727. Véase, además, Colón v. All Amer. Life & Cas. Co., 110 D.P.R. 772,775, n. 1 (1981); Lozada v. Antonio Roig, Sucrs., 73 D.P.R. 266, 270 (1952).
La regla no define lo que constituye conducta temeraria; pero el Alto Foro ha expresado que la temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. También ha resuelto que constituye conducta temeraria el que una parte haga necesario un pleito que pudo evitarse o interponga pleitos frívolos y así obligue a la otra paite a incurrir en gastos innecesarios. En Fernández v. San Juan Cement Co., 118 D.P.R. 713 (1987), expresó el Tribunal Supremo lo siguiente:
“Hemos resuelto que existe temeridad si el demandado contesta una demanda y niega su responsabilidad total, aunque la acepte posteriormente; si se defiende injustificadamente de la acción; si la parte demandada en efecto cree que la cantidad reclamada es exagerada y esa es la única razón que tiene para oponerse a las peticiones del demandante y no admite francamente su responsabilidad limitando la controversia a la fijación de la cuantía a ser concedida; si se arriesga a litigar un caso del que se desprendía prima facie la negligencia. (...) Negar un hecho que le consta es cierto al que hace la alegación, también constituye temeridad. ”
Cuando el Tribunal de Primera Instancia impone honorarios de abogado en su dictamen se presume que ello lleva implícita una determinación de temeridad. Una vez determinada la temeridad, su imposición es mandatoria. Fernández v. San Juan Cement, Co. Inc., 118 D.P.R. 713 (1987). En el presente caso, el foro de primera instancia no dispuso de forma expresa que Floridita había sido temeraria, pero le ordenó a pagarle a la Asociación “una cantidad razonable en concepto de honorarios de abogado ”, por lo que implícitamente declaró la temeridad de Floridita.
La determinación de si una parte ha actuado o no con temeridad descansa en la discreción del tribunal. Por lo cual, debido a que tal determinación es un asunto discrecional del tribunal sentenciador, los tribunales revisores *858 intervendrán cuando surja de tal actuación un claro abuso de discreción.
En el caso ante nos, el foro primario impuso honorarios de abogado en la sentencia, lo que supone una determinación de temeridad. Sostenemos dicha determinación, que está dentro del ámbito discrecional del Tribunal de Primera Instancia. Dado que no se nos ha convencido de que medió arbitrariedad, prejuicio, o error, no procede que sustituyamos su criterio, CNA Casualty de P.R. v. Torres Díaz, 141 D.P.R. (1996)27, (1996).
Ahora bien, respecto a la suma impuesta por dicho concepto, en Corpak, Art Printing v. Ramallo Brothers, 125 D.P.R. 724, 738 (1990), nuestro más Alto Foro dictaminó que:

“Por otro lado, nada en el lenguaje de la citada Regla 44.1(d) de Procedimiento Civil permite la inferencia razonable de que la suma de dinero a imponerse a la parte perdidosa que ha actuado con temeridad o frivolidad tiene que necesariamente coincidir con los honorarios efectivamente pagados por la parte victoriosa a su representante legal. Asociación de Condóminos v. Trelles Reyes, 120 D.P.R. 571 (1988). Todo lo contrario. Hecha la determinación por el tribunal de instancia de que la parte perdidosa actuó con temeridad o frivolidad, lo que la citada Regla 44.1(d) de Procedimiento Civil específicamente le exige al referido foro es que le imponga a dicha parte, como sanción, una suma de dinero por concepto de honorarios que corresponda a esa conducta temeraria o frívola observada por ella; esto es, al grado, o intensidad, de tal conducta. ”

Al cuantificar esos honorarios, los tribunales de instancia pueden tomar en consideración factores tales como la naturaleza del litigio, las cuestiones de derecho envueltas en el mismo, la cuantía en controversia, el tiempo invertido, los esfuerzos y actividad profesional que hayan tenido que desplegarse, y la habilidad y reputación de los abogados envueltos, Serrano Vda. de Cartagena v. Lugo Ramírez, 83 D.P.R. 300, 303 (1961); Pan American v. Tribunal Superior, 100 D.P.R. 413, 420 (1972). Deberá mantenerse presente que el grado o intensidad de la conducta temeraria o frívola es el criterio o factor determinante y crítico que tienen que tomar' en consideración dichos tribunales al determinar la cuantía de los honorarios de abogado a imponerse a la parte perdidosa que ha actuado con temeridad o frivolidad, Santos Bermúdez v. Texaco P.R., Inc., 123 D.P.R. 351 (1989); factor que será, a su vez, el que este Tribunal, de manera principal, tomará en cuenta al decidir si los tribunales de instancia han ejercitado o no en forma correcta la discreción que a esos efectos le concede la citada Regla 44.1(d) de Procedimiento Civil.
La imposición del pago de $3,600.00 de honorarios de abogado respondió a la reclamación de la Asociación por dicho concepto, a base de los honorarios efectivamente cobrados por la representación legal de dicha parte. Por tanto, no es el resultado de la aplicación de los criterios enunciados por el Alto Foro, los que deben guiar el ejercicio de la discreción del Tribunal de Primera Instancia. De ahí que procede la devolución a dicho foro para que, considerados dichos factores, determine la suma que, como sanción por su temeridad, procede imponerle a Floridita por concepto de honorarios de abogado.
Respecto a las costas, el mecanismo adecuado para detallar dichas partidas de gastos es el memorando de costas, el cual deberá presentarse bajo juramento en el término jurisdiccional de diez (10) días contados a partir del archivo en autos de copia de la notificación de la sentencia. Regla 44.1(b), 32 L.P.R.A. Ap. Ill, R. 44.1. Una vez presentado oportunamente el memorando de costas, el tribunal deberá determinar cuáles gastos fueron necesarios y razonables, y concederlos a la paite victoriosa. JTP Development Corp. v. Majestic Realty Corp., supra, pág. 461.
Así pues, tras dictarse sentencia y notificarse el 24 de agosto de 2007, la Asociación sometió el 31 de agosto de 2007 el memorando de costas, en el que reclamó $3,600.00 por concepto de honorarios de abogado y $155.64 de costas. El 7 de septiembre de 2007, es decir, siete días después, notificada el 20 de septiembre, el foro apelado dictó orden en la que declaró con lugar el memorando de costas según presentado.
*859 La apelante presentó el 16 de septiembre de 2007 una moción para impugnar el memorando de costas sometido. En éste consignó que el memorando de costas presentado por la Asociación le había sido notificado el 7 de septiembre de 2007, siete días después de su presentación ante el Tribunal y luego de haber transcurrido diez días desde la notificación de la sentencia. Sometió copia del sobre en el que recibió copia del memorando, del que se desprende que dicha notificación se hizo en la fecha aludida, por lo que adujo que la presentación de su oposición al memorando de costas era oportuna.
No obstante, el foro apelado sostuvo su determinación de 7 de septiembre de 2007. Incidió el foro apelado al así actuar. Veamos.
La Regla 44.1(b) establece que cualquier parte que no esté de acuerdo con las costas reclamadas, puede impugnarlas en todo o en parte, en el término de diez (10) días a partir de habérsele notificado el memorando. Así, el requisito de presentar un memorando de costas no solamente es necesario para que el tribunal pueda hacer una determinación acertada de la cantidad a conceder por ese concepto, sino también para que la parte de quien se reclaman dichas costas pueda hacer valer el derecho que le concede la propia Regla 44.1(b) a impugnar cualquier partida que considere improcedente, Burlington Air Exp., Inc. v. Mun. Carolina, 154 D.P.R. 588 (2001).
En Lagares v. E.L.A., 144 D.P.R. 601 (1997), el Alto Foro pasó juicio sobre una situación en que una moción de reconsideración no fue notificada a la parte contraria por su promovente dentro del término jurisdiccional de quince (15) días que fija la Regla 47 de Procedimiento Civil, supra, para presentar tal moción. Allí, el Alto Foro expresó que debe tenerse en cuenta que la atribución de carácter jurisdiccional a una medida procesal tiene, evidentemente, graves consecuencias. Asimismo, concluyó que es evidente que el promovente de la moción de reconsideración debe notificarla a la parte contraria, a la misma vez que presenta dicha moción a la consideración del tribunal de instancia. De ese modo, la paite contraria queda enterada pronto de la medida tomada por su promovente y puede anticipar sus propios pasos con respecto a los próximos eventos procesales del caso. Conforme a lo anterior, dispuso que aunque la notificación por el promovente de una moción de reconsideración dentro del término fijado para presentarla no es de carácter jurisdiccional, dicha moción debe notificarse dentro del término referido, y que ello, prospectivamente, constituye un requisito de cumplimiento estricto. Dicha doctrina fue posteriormente adoptada en el ámbito administrativo, en Febles v. Romar, 159 D.P.R. 714 (2003).
Los tribunales tienen discreción para extender un término de cumplimiento estricto únicamente cuando la parte demuestra justa causa para la dilación. A estos efectos, los tribunales deben tomar en consideración dos elementos: (1) que en efecto existe justa causa para la dilación, y (2) que la parte interesada acredite de manera adecuada la justa causa. Rojas v. Axtmayer Ent., Inc., ante; Arriaga v. F.S.E. 145 D.P.R. 122 (1998); Szendrey v. F. Castillo Family Properties, Inc., ante. En ausencia de ello, los tribunales carecen de discreción para extender dicho término y acoger el recurso ante su consideración. Johnson & Johnson v. Mun. de San Juan, 2008 JTS 17, res. el 19 de diciembre de 2007; Banco Popular de P.R. v. Mun. de Aguadilla, 144 D.P.R. 651 (1997).
Al momento de aprobar el memorando de costas, no habían transcurrido los diez días concedidos por la Regla 44.1(b) de las de Procedimiento Civil, supra, para oponerse al contenido del memorando. Una vez se le sometió la evidencia al foro primario respecto a la falta de notificación a Floridita del memorando de costas dentro del término jurisdiccional dispuesto para someterlo, debió reconsiderar la resolución tomada.
A la luz de la doctrinas sentada en Lagares v. E.L.A, supra, la que extendemos por analogía respecto a la presentación y notificación del memorando de costas, concluimos que erró el foro de primera instancia al conceder las costas sin que hubiese transcurrido el término de diez días para someter objeciones y sin que se justificara en forma alguna la dilación por parte de la Asociación al notificar el memorando de costas. La falta de notificación del memorando de costas a Floridita dentro del término jurisdiccional dispuesto para su presentación, colocó a dicha parte en situación de no poder cuestionar las costas reclamadas y privó de discreción al foro de primera instancia para actuar. En virtud de ello, expedimos el certiorari solicitado y dejamos sin efecto la *860 concesión de las costas a favor de la Asociación.
Se confirma la sentencia parcial apelada.
Se expide auto de certiorari a los fines de:

“1. revocar la imposición del pago de $155.64 por concepto de costas;

2. confirmar la determinación de temeridad e imposición de honorarios de abogados; y

3. dejar sin efecto la suma impuesta por concepto de honorarios de abogado y devolver al Tribunal de Primera Instancia para que, a la luz de los criterios enunciados por la jurisprudencia, imponga la suma que deberá pagar Floridita a la Asociación por dicho concepto. ”

Lo acuerda y manda el Tribunal y lo certifica la Secretaria.
María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones