Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| COLEGIO OTOQUI, INC.<br><br>Recurrente<br><br>v.<br><br>NEGOCIADO DE RECAUDACIONES<br><br>Recurridos | KLRA202300554 | *REVISIÓN JUDICIAL* Procedente de la Secretaría de Procedimiento Adjudicativo del Departamento de Hacienda<br><br>Caso Núm.: 2021P244<br><br>Sobre: Denegatoria de solicitud de prescripción de deuda de contribución sobre ingresos período contributivo 2001 al 2011 |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de marzo de 2024.

Comparece la parte recurrente, el Colegio Otoquí, Inc. (¨Colegio¨ ¨recurrentes¨) mediante *Recurso de Revisión Administrativa* solicitando que revisemos una *Resolución* emitida el 25 de septiembre de 2023 por la Secretaría de Procedimiento Adjudicativo del Departamento de Hacienda (¨Hacienda¨). El dictamen administrativo aludido acogió una solicitud de sentencia sumaria, declaró no ha lugar una *Querella* y determinó que las deudas contributivas imputadas a la parte recurrente no están prescritas, y por tanto su cobro es exigible.

Por los fundamentos que expondremos a continuación, se *confirma* el dictamen recurrido.

**I.**

La controversia ante nuestra consideración tiene su génesis en el 2001, fecha en la que el Colegio Otoquí señala que se organizó como una entidad sin fines de lucro. Alegaron que, con la intención

de obtener una exención contributiva, el Colegio contrató los servicios de la Sra. Marie Rivera, el Sr. Néstor Sánchez Rodríguez y MCR Accounting & Associates, LLC ("contables") para que gestionaran la solicitud ante el Departamento de Hacienda. Adujeron que los contables nunca completaron la referida solicitud y el Colegio operó bajo la presunción de que fueron debidamente constituidos como una entidad sin fines de lucro que gozaba de una exención contributiva.

Bajo este supuesto, durante los años contributivos del 2001 al 2014, radicaron Formularios 480.7 – *Planillas Informativas de Organización Exenta de Contribuciones*.

Así las cosas, el 4 de septiembre de 2015, solicitaron ante Hacienda una certificación de vigencia como entidad sin fines de lucro. El 14 de septiembre de 2015, Hacienda les notificó que, de acuerdo con sus récords, no figuraban entre las organizaciones sin fines de lucro que disfrutan de exención contributiva.

El 29 de enero de 2016, el Negociado de Auditoría Fiscal de Hacienda le requirió al Colegio las *Planillas de Contribuciones sobre Ingresos de Corporaciones* mediante el Modelo SC 3101 – *Razones por las cuales no está obligado a rendir Planillas*, y el Modelo SC 3101.1 – *Razones por las cuales no está obligado en Ley a rendir Planillas*, para los años 2001 al 2014. En cumplimiento, el 3 de marzo de 2016, el recurrente entregó las planillas de contribución sobre ingresos de los años requeridos.

Al tasar la deuda contributiva utilizando las planillas radicadas en marzo de 2016, el 18 de noviembre de 2016, el Área de Rentas Internas le notificó al recurrente una *Certificación de Deuda* ascendente a $732,724.95, incluidos el principal, penalidades, intereses y recargos para los periodos contributivos de 2001 a 2014.

Posteriormente, el 15 de febrero de 2017, el Colegio presentó ante el Negociado de Recaudaciones ("Negociado" o "recurridos") una

*Solicitud de Prescripción de Deuda Contributiva* para los periodos del 2002 al 2010. El Colegio argumentó que la deuda correspondiente a los referidos periodos estaba prescrita.

El 3 de agosto de 2021, el Negociado denegó la *Solicitud de Prescripción* y notificó que el cobro de deudas de contribución sobre ingresos para el periodo de 2001 al 2011[1] era exigible porque no habían transcurrido más de siete (7) años desde la fecha de tasación. Fundamentó su determinación en que todas las planillas radicadas el 3 de marzo de 2016 fueron tasadas dentro del término de cuatro (4) años que establece el Código de Rentas Internas.

Consecuentemente, el 22 de septiembre de 2021, el Colegio presentó una *Querella* ante la Secretaría de Procedimiento Adjudicativo ("SPA") y solicitó que se le ordenara al Negociado a emitir una decisión sobre los planteamientos realizados en la solicitud de prescripción.

Luego de varios trámites procesales, ante la falta del Negociado de presentar su Contestación a la Querella, el 13 de junio de 2022, mediante *Orden*, se le anotó la rebeldía. No obstante, el 28 de junio de 2022 el Negociado solicitó un término adicional para presentar la Contestación a la Querella. Dicha solicitud fue concedida mediante *Orden* del 12 de julio de 2022. Así las cosas, el 18 de julio de 2022, el Negociado presentó su *Contestación a la Querella*.

El 28 de abril de 2023, ante la falta de cumplimiento con las órdenes de la SPA, el Colegio presentó una *Segunda Solicitud de Anotación de Rebeldía*. Posteriormente, el 4 de mayo de 2023, mediante *Orden*, la SPA le anotó la rebeldía al Negociado.

---

[1] Aunque la solicitud de prescripción fue para los años contributivos 2002 al 2010, el Negociado de Recaudaciones añadió en su determinación de denegatoria de prescripción los años contributivos 2001 y 2011.

Posteriormente, el 1 de junio de 2023, el Colegio presentó una *Solicitud de Resolución Sumaria.* En apretada síntesis, los recurridos argumentaron que, Hacienda no tasó las respectivas deudas dentro de los términos prescriptivos aplicables. Por ende, señalaron que, las deudas correspondientes a los años 2001 entre 2011 prescribieron en el 2016.

Como fundamento, acudieron a los casos de *Beard v. Commissioner,* 82 TC 766 (1984), *Atlantic Land Improvement Co. v. US,* 790 F.2d 853 (1986) y *Germantown Trust Co. v. Commissioner,* 309 US 30 (1940) para argumentar que:

> La norma prevaleciente a nivel federal es que la presentación de un formulario incorrecto activa el término prescriptivo si concurren cuatro elementos:
> 1) el documento contiene suficiente información para calcular la responsabilidad contributiva;
> 2) el documento aspira a ser una planilla;
> 3) el contribuyente realizó un esfuerzo razonable y honesto para cumplir con los rigores del derecho contributivo;
> 4) el contribuyente firmó el documento bajo pena de perjurio.

Además, señaló que el *Internal Revenue System* (¨IRS¨) adoptó tal norma en un memorando publicado en el 2015. Véase, *Internal Revenue Service Memorandum,* Office of Chief Counsel, Release Number: 20152101F.

El 7 de junio de 2023, se celebró una Conferencia que contó con la comparecencia de ambas partes. Durante la referida Conferencia la SPA verbalmente denegó la solicitud de resolución sumaria y señaló vista administrativa en su fondo.

Posteriormente, el 15 de agosto de 2023, el Colegio expresó su interés en solicitar reconsideración. Por esta razón, solicitó que la SPA emitiera mediante Resolución la determinación realizada en la Conferencia.

El 25 de septiembre de 2023, la SPA emitió una *Resolución* mediante la cual determinó acoger la solicitud de resolución

sumaria, ya que se le había anotado la rebeldía al Negociado. A su vez, declaró No Ha Lugar la *Querella* y sostuvo la determinación realizada por el Negociado de Recaudaciones el 3 de agosto de 2021 respecto al cobro de la deuda pendiente. Mediante el referido dictamen, la SPA expresó que:

> A base [de] todo esto, y luego de analizado minuciosamente el expediente del caso y la *Solicitud de Resolución Sumaria*, esta Secretaría determina acoger la misma, por considerar que, se anotó la rebeldía al Negociado de Recaudaciones y que, con la información suministrada por el Colegio, **podemos establecer que no hay hechos controvertidos y que, solo es necesario adjudicar la querella a base del derecho aplicable**. [...]. (Énfasis suplidos).

En lo pertinente, respecto a la jurisprudencia federal citada por los recurrentes, la SPA determinó que, si bien es cierto la norma aplicable en la esfera federal, dicha norma no aplicaba en la presente controversia. Explicó, que:

> La génesis de esta doctrina fue que una entidad que debió radicar y tributar a base de una planilla de corporaciones, presentó una planilla de fideicomiso. En esa situación el IRS argumentó que debido a que se presentó el formulario incorrecto, el término prescriptivo no comenzó a transcurrir, pero el Tribunal Supremo de Estados Unidos rechazó tal argumento basándose en que lo importante es si de la cantidad de información provista en la planilla se puede computar la deuda del contribuyente.

A su vez, puntualizó que, la normativa federal a la que hizo referencia el Colegio se refiere a planillas que, de ordinario, producen una tasación contributiva. En cambio, señaló que, las Planillas Informativas radicadas por los recurrentes están diseñadas para informar sobre datos relacionados a entidades exentas de tributación, o sea, de ordinario, no producen una tasación contributiva. Por ende, la finalidad de las planillas radicadas por el Colegio era informar sobre las operaciones de una entidad jurídica que creían estar exenta de tributación. Bajo este supuesto, nunca tuvieron la intención de computar una contribución sobre un ingreso tributable. La SPA concluyó que, el término prescriptivo

comenzó a correr cuando el Colegio presentó las planillas correspondientes en el 2016.

Inconformes, el 25 de octubre de 2023, el Colegio presentó un *Recurso de Revisión Administrativa* solicitando que revisemos la *Resolución* emitida el 25 de septiembre de 2023 por la SPA. Realizó los siguientes señalamientos de errores:

1. **Erró la Secretaría al no estimar probados todos los hechos propuestos en la solicitud de adjudicación sumaria del Colegio e imputar al Colegio intención aviesa que Hacienda ni siquiera había imputado. En la alternativa[,] erró la Secretaría al no celebrar la visa evidenciaría para dirimir la intención del Colegio al presentar las planillas.**

2. **Erró la Secretaría al no resolver la solicitud de resolución sumaria a favor del Colegio, bajo los criterios enumerados en la jurisprudencia federal aplicable.**

3. **Erró la Secretaría al atender alegaciones del Negociado que fueron eliminadas.**

4. **Erró la Secretaría al convalidar la presentación de planillas exigida por Hacienda en el año 2016, cuando ya habían transcurrido todos los períodos prescriptivos. En la alternativa, erró la Secretaría al no celebrar vista evidenciaría para dirimir las circunstancias de la presentación de planillas exigida por Hacienda en el 2016.**

El 7 de diciembre de 2023, el Negociado presentó su oposición al recurso y solicitó que confirmemos la Resolución del 25 de septiembre de 2023.

Examinado el expediente y con el beneficio de la comparecencia de ambas partes, resolvemos.

## II.

**A. La revisión judicial y la doctrina de la deferencia judicial**

La Sección 4.1 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA § 9671, dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. La finalidad de esta

disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Andrea Hernández Feliciano v. Municipio de Quebradillas,* 2023 TSPR 6, resuelto el 20 de enero de 2023. Es norma reiterada que, al revisar las determinaciones de los organismos administrativos, los tribunales apelativos le conceden gran consideración y deferencia, por la experiencia y el conocimiento especializado que estos poseen. *Íd.*

Por su parte, la Sección 4.5 de la LPAU, 3 LPRA § 9675, establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que, los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente contrarias a derecho. *Super Asphalt v. AFI y otro*, 206 DPR 803 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117 (2019).

Por otro lado, la citada Sección 4.5 de la LPAU, *supra,* dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Superintendente,* 201 DPR 26 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Íd.* Lo anterior responde a la vasta experiencia y al conocimiento especializado que tienen las agencias sobre los asuntos que le son encomendados. *Capó Cruz v. Junta de Planificación,* 204 DPR 581 (2020).

Por consiguiente, dada la presunción de corrección y regularidad que reviste a las determinaciones de hecho elaboradas por las agencias administrativas, éstas deben ser respetadas mientras la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Graciani Rodríguez v. Garaje Isla Verde*, supra. Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque esta no tiene que ser la única o la más razonable. *Andrea Hernández Feliciano v. Municipio de Quebradillas,* supra.

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Íd.*

Acorde con lo antes expuesto, la revisión judicial de los dictámenes administrativos está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Íd.* Por tanto, si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar, con suficiente evidencia, que la decisión del ente administrativo no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Capó Cruz v. Junta de Planificación, supra; Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004). De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad. *O.E.G. v. Rodríguez,* 159 DPR 98, 118 (2003).

**B. Prescripción de la tasación y cobro de una deuda contributiva**

La facultad de tributación del Estado Libre Asociado es el más fundamental de sus poderes públicos y gubernamentales ya que se trata de un poder esencial a su subsistencia y para su supervivencia como un estado político. *Burlington Air Express, Inc. v. Municipio de Carolina*, 154 DPR 588 (2001); *RCA v. Gob. de la Capital*, 91 DPR 416, (1964).

Todo procedimiento para el cobro de contribuciones está sujeto a: "(1) los trámites mínimos del debido proceso de ley; (2) la exigibilidad y validez de la deuda, y (3) los términos prescriptivos dispuestos en los diversos estatutos". *Rivera Santiago v. Srio de Hacienda*, 119 DPR 265 (1987).

La Sección 6010.05 del Código de Rentas Internas de Puerto Rico ("Código de Rentas Internas"), Ley Núm. 1 de 31 de Enero de 2011, según enmendada, establece el periodo de prescripción para la tasación y el cobro de deudas contributivas. A tales efectos, dispone:

> [...] **[E]l monto de las contribuciones o impuestos establecidos por cualquier Subtítulo de este Código será tasado <u>dentro de cuatro (4) años después de haberse rendido la planilla o declaración,</u> y ningún procedimiento en corte sin tasación para el cobro de dichas contribuciones será comenzado después de la expiración de dicho período**. [...].13 LPRA § 33005. (Énfasis suplido).

Por otro lado, la Sección 6010.06 (d), 13 LPRA § 33006, dispone los términos para cobrar una deuda que ha sido oportunamente tasada. La referida Sección establece que:

> Cuando la tasación de cualquier contribución impuesta por este Código, incluyendo las contribuciones retenidas, hubiere sido hecha dentro del período de prescripción propiamente aplicable a la misma, dicha contribución podrá ser cobrada mediante procedimiento de apremio o mediante procedimiento en corte siempre que se comiencen,
> (A) **dentro de siete (7) años después de la tasación de la contribución**, o
> (B) con anterioridad a la expiración de cualquier período para el cobro que se acuerde por escrito antes de cualquier período de siete (7) años entre

el Secretario y el contribuyente. *Íd.* (Énfasis suplido).

No obstante, la Sección 6006 (d) dispone, además, que el Secretario quedará impedido de cobrar aquellas deudas impuestas de las cuales ya han transcurrido **diez (10) años desde que fueron tasadas**. *Íd.* (Énfasis suplido).

Nuestro Código Civil define la prescripción como ¨una defensa que se opone a quien no ejercita un derecho o acción dentro del plazo de tiempo que la ley fija para invocarlo¨. 31 LPRA § 9481. De igual manera, establece que las acciones prescriben por el mero lapso del tiempo fijado por ley. *Íd.*

**III.**

En síntesis, el recurrente alega que la deuda contributiva en controversia está prescrita.

Mediante el primer señalamiento de error, el Colegio expuso que la SPA incidió al: (1) no estimar probados todos los hechos enumerados en la solicitud; (2) imputarle al Colegio una intención aviesa, y; (3) no celebrar una vista evidenciaria para dirimir la intención del Colegio al presentar las planillas.

En primer lugar, al presentar una solicitud de resolución sumaria, el foro tomará como cierto todos los hechos no controvertidos que presente el promovente. No obstante, esto no significa que automáticamente proceda la resolución sumaria o que el promovente tenga derecho a que se dicte sentencia a su favor.

Previo a resolver la controversia, el foro vendrá obligado a aplicar el derecho a los hechos presentados por el promovente. Surge de la Resolución que esto fue lo que hizo la SPA.

La Resolución expresa y claramente dispone que la SPA estimó probado todos los hechos propuestos por el Colegio. Dispuso, al respecto, que ¨[…] con la información suministrada por el Colegio, **podemos establecer que no hay hechos controvertidos y que,**

**solo es necesario adjudicar la querella a base del derecho aplicable¨**. (Énfasis suplido).

En segundo lugar, alegan que la SPA le impuso una supuesta ¨intención aviesa¨ al Colegio. Luego de minuciosamente examinar el expediente y la Resolución, resulta forzoso concluir que la SPA no hizo alusión ni realizó conclusiones respecto a la intención del Colegio al presentar las planillas erróneas. La SPA únicamente examinó los hechos, tal y como fueron presentados por el Colegio, y aplicó el derecho para fundamentar sus conclusiones. Los recurrentes deben recordar que, aun cuando no hubieran tenido la intención de presentar planillas erróneas, como resultado de estas, durante los años 2001 al 2014 evadieron su responsabilidad contributiva. Como resultado de esta acción, en efecto, presentaron planillas falsas o fraudulentas.

En tercer lugar, si el foro decide acoger una solicitud de resolución sumaria, no procede la celebración de vistas posteriores para resolver la controversia.

Mediante el segundo señalamiento de error, el Colegio argumenta que la SPA erró al no aplicar la jurisprudencia federal esbozada por estos en la solicitud de sentencia sumaria para resolver la controversia. En la *Solicitud de Resolución Sumaria,* el Colegio utilizó la normativa federal para argumentar que el periodo prescriptivo comenzó a transcurrir tras la presentación de cada planilla en su respectivo año. Tal y como señaló la SPA en la Resolución, la jurisprudencia federal discutida por los recurrentes se refería a la presentación de planillas que generaban tasación contributiva, contrario a las planillas presentadas por los recurrentes.

El tercer señalamiento de error indica que la SPA incidió al considerar alegaciones realizadas por el Negociado que fueron eliminadas. No obstante, el Colegio no señaló cuáles fueron las

alegaciones supuestamente eliminadas y atendidas en la Resolución. Los recurrentes no nos pusieron en posición de determinar si se cometió el error señalado.

Por último, mediante el cuarto señalamiento de error, argumentan que: (1) la SPA erró al convalidar la presentación de las planillas radicadas en el 2016 cuando ya había transcurrido el periodo prescriptivo, y; (2) en la alternativa, la SPA debía celebrar una Vista Evidenciaria para dirimir las circunstancias de la presentación de las planillas en el 2016.

Primero, los recurrentes aducen que Hacienda no tiene autoridad para ordenar la entrega de nuevas planillas para periodos durante los cuales ya se presentaron planillas, menos cuando el término para tasar la deuda está prescrito.

El Código de Rentas Internas establece un término prescriptivo de cuatro (4) años para tasar una deuda de contribución, contados a partir de la radicación de la planilla. Además, dispone un término prescriptivo de siete (7) años para el cobro de la referida deuda, a partir de su tasación.

Las planillas radicadas por el Colegio hasta el 2014 no generaban una tasación contributiva, ya que los recurrentes incorrectamente radicaron planillas correspondientes a entidades exentas del pago de contribuciones. No es posible tasar una deuda contributiva utilizando una planilla que en sí no genera una tasación contributiva. Debido a esto, el término prescriptivo de cuatro (4) años comenzó a correr en el 2016 con la presentación de las Planillas de Corporación correspondientes. Dichas Planillas de Corporación generan una tasación contributiva y el periodo para realizar esta tasación comenzó a correr al momento de su presentación.

La facultad de tributación otorgada a Hacienda le permite ordenar la presentación de planillas cuando estas no se hayan

radicado. En el caso de autos, las planillas radicadas por el Colegio nunca fueron las que por Ley venían obligados a someter. Conforme a esto, el Colegio evadió su responsabilidad contributiva durante más de una década.

La presentación de las nuevas planillas no constituyó una mera enmienda a las planillas originalmente radicadas. Estas nuevas planillas, por primera vez, permitieron que Hacienda tasara la deuda debida por el Colegio y permitió que los recurrentes cumplieran con su responsabilidad contributiva.

Concluimos que, la SPA no cometió los errores señalados por los recurrentes.

**IV.**

Por todo lo anterior, se *confirma* el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones